75 So.2d 312 (1954)
Jerome B. MILLER, Appellant,
v.
STATE of Florida, Appellee.
Supreme Court of Florida. Division B.
October 29, 1954.
Caldwell, Parker, Foster & Wigginton, Leo L. Foster, Tallahassee, for appellant.
Richard W. Ervin, Atty. Gen., and Bart L. Cohen, Asst. Atty. Gen., for appellee.
DREW, Justice.
The appellant, defendant below, appeals from judgment and five year sentence imposed after a jury found him guilty of manslaughter under Section 782.07, F.S. 1951, F.S.A. Defendant's main contention raises the question of whether the evidence is sufficient under the law to sustain the conviction.
The accident occurred on a dry, clear Sunday afternoon, April 19, 1953, on U.S. Highway No. 19, 5.5 miles east of Cross City, Florida. The defendant was traveling east in a Buick automobile and William *313 Earl Varn, the deceased, was driving west in his Plymouth car. The physical evidence at the scene of the accident shows that the Varn car pulled off to the side of the highway on the north shoulder with two wheels, the right front and the right rear wheels, for a distance of 50 feet and then traveled for a distance of 24 feet with all wheels off the pavement, before the point of impact, the brakes being applied the entire distance.
The point of impact was on the north shoulder of the highway at a time when both cars were entirely off the pavement of the highway. The whole front end of the Varn car was damaged, the defendant's Buick was damaged on its right front fender and side. After the impact the Varn car spun around and came to a stop near the point of impact; the defendant's car come to rest headed east 41 feet from the point of impact.
Witnesses for the State included Mr. C.C. Wilder and his wife. Mr. Wilder testified that he was driving east on the highway about 40-45 M.P.H., met the Varn car coming from the opposite direction and that about the time this car got about even with him, he heard a squealing noise and saw it careen toward the right as if it had a flat tire. He heard the collision and returned to the scene of the wreck where he saw defendant caring for his baby and defendant's wife getting out of the automobile. Mrs. Wilder testified that almost immediately after they met the Varn automobile she heard a crash, glanced back and saw bodies flying through the air, and upon returning to the scene saw Varn's body lying upon the ground.
On his own behalf, the defendant testified that he had left Tallahassee about 11:45 a.m. intending to go to Miami with his wife and baby who were in the front seat of his 1949 Buick convertible; that just previous to the accident he was proceeding on the highway at the prevailing rate of speed for traffic which was 40-45 M.P.H. and was on the right side of the road going southeast; that his large dog had been in the back seat and suddenly jumped into the front seat distracting him and causing him to lose control of the car which went into the north lane of traffic; that upon regaining control of the car he saw the Plymouth coming toward him at a fast rate of speed and did the only thing which was possible to avoid a collision which was to turn off the road and onto the shoulder and head for the ditch; that he did not apply his brakes until he got off the road on the north side; that immediately after the accident his forehead, nose and knee were bleeding and that it was not until Thursday that he could remember what had taken place.
The State concedes that the defendant's version of the accident related above is sufficient to absolve him of criminal liability but assumes, as we must, that the jury rejected this version in finding the defendant guilty. In lieu of the rejected testimony of defendant, the State relies upon the testimony of a State's witness to the effect that the defendant right after the accident stated, "I pulled out to pass a car. I couldn't make it so I took to the ditch. Oh! If the other fellow had only stayed on the highway."
This statement of defendant, coupled with the surrounding circumstances, the State insists, shows culpable conduct which is sufficient to sustain the conviction under the law. But the State cites no authority for its position, and in extended research we have not been able to find supporting authority. On the other hand, the facts in this case under decisions of this Court are far from sufficient to sustain liability of the defendant were this a civil action under the automobile guest statute which requires a showing of "gross negligence or willful and wanton misconduct" that is the proximate cause of death, Section 320.59, F.S. 1951, F.S.A. In none of our many cases pertaining to manslaughter arising from operation of an automobile do we find where we have sustained a conviction on evidence so meager as here presented.
The culpable conduct necessary to sustain proof of manslaughter under Section 782.07, supra, "must be of `a gross and *314 flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them.'" (Italics added.) Cannon v. State, 91 Fla. 214, 221, 107 So. 360, 363.
In interpreting the above quoted statement of defendant made immediately after the tragic event in the light least favorable to him, the most that can be said is that while driving at a reasonable and lawful speed on a dry road he pulled out of the lane of traffic at a time when there was not sufficient time and space to pass the car ahead of him before he met the oncoming car. This conduct standing alone amounts to at most no more than an error of judgment and is therefore far short of the degree of culpable and wanton misconduct which must be shown to sustain the conviction. Koger v. Hollahan, 144 Fla. 779, 198 So. 685, 131 A.L.R. 886. See Leslie v. West, Fla. 1949, 38 So.2d 821; De Wald v. Quarnstrom, Fla. 1952, 60 So.2d 919; Jackson v. Edwards, 144 Fla. 187, 197 So. 833.
The case of Koger v. Hollahan, supra, is directly in point on its facts although the action was one under the guest statute, now being Section 320.59, supra, instead of manslaughter. The plaintiff alleged in substance: "That on the 4th day of July the driver of the car was proceeding along the highway on which a large number of automobiles were traveling, as he well knew, `and that while operating said automobile at a high rate of speed he attempted to pass an automobile also proceeding [in the same direction] while traffic proceeding [in the opposite direction] was approaching and when there was not sufficient time and space to pass said automobile, * * * whereupon, the automobile operated by [the driver] careened across said highway into and against a truck proceeding [in the opposite direction] which was at the time of the impact off and to the [opposite side] of said highway' and that the driver operated said automobile in a grossly negligent manner."
The trial court sustained a demurrer to these allegations. Upon plaintiff's appeal this Court, speaking through Mr. Justice Thomas, held that the allegations were "far short" of establishing a cause of action but that the plaintiff should have been given leave to amend. In part it was stated:
"The statement that the car was traveling at a high rate of speed seems to us to be little more than the use of a relative term. One rate of speed may well be reckless under some circumstances, while the same rate under other circumstances may not fall within that category. The averment that there was not sufficient time and space to pass the car in front proceeding in the same direction in order to avoid the one approaching is hardly more than the charge of an error in judgment, and the statement that the car careened across the road and struck a truck off the pavement simply indicates that when the automobile in which the plaintiff was driving swerved, it traversed the comparatively few feet to the opposite side of the pavement. Taking all of these allegations together, and construing them against the pleader, we think that they fall far short of establishing gross negligence, or wanton or wilful misconduct, as distinguished from ordinary negligence." (Italics supplied.)
We have referred to the cases arising under the guest statute because in that field there are decisions of this Court particularly in point with reference to the fact situation involved in the main case. Decisions arising under our guest statute must necessarily be relevant to cases in which there is prosecution for manslaughter for the operation of an automobile. This is true because there can be no doubt that the culpable conduct to sustain imprisonment must be of a kind sufficient at *315 least to sustain an action for civil liability under our guest statute.
Our decisions under the manslaughter statute fail to indicate that the evidence in this case is sufficient to sustain the conviction. In cases under that statute upholding convictions of manslaughter involving an accident in which defendant was on the wrong side of the road, there were circumstances different and in addition to those here, which indicated a rashness of action on the part of the defendant not shown by the evidence in this record. For example in Lipsey v. State, 154 Fla. 32, 16 So.2d 439, there was darkness and dense fog and the defendant could see only 30 feet ahead yet he drove to the left of the highway and struck deceased's oncoming truck and then traveled 100 feet before coming to a stop, wrecking the truck and killing four persons. In Hyman v. State, 152 Fla. 446, 12 So.2d 437, there was evidence that defendant was drunk at the time he turned left into the path of deceased coming from the opposite direction on a motorcycle. In Johnson v. State, 148 Fla. 510, 4 So.2d 671, the defendant had gone thirty hours without sleep, knew he was in a stupor and had fallen asleep shortly before he drove his truck to the opposite side of the road hitting the deceased. In Franklin v. State, 120 Fla. 686, 163 So. 55, the defendant was driving at a high rate of speed in the nighttime on the wrong side of the road and struck and overturned a truck which had pulled off the road.
In Williams v. State, Fla. 1951, 54 So.2d 66, the conviction was reversed. There defendant was driving his truck 45-60 M.P.H. north on the road in rainy weather and when about one block from a car heading south, defendant's truck began to swerve and eventually crossed the center line into the path of the oncoming car. This evidence was held insufficient to sustain the conviction of manslaughter even though the jury may have disregarded defendant's story that the truck was caused to swerve by application of the brakes.
The State in its brief refers to the quoted statement of the defendant and urges that this statement "coupled with the fact that the appellant did not pass the Wilder car nor was he seen by the occupants of the Wilder car shows that he pulled directly out into the path of the Plymouth occupied by the deceased." And the State argues also that the defendant "blindly" drove his automobile into the path of an oncoming vehicle and that the defendant "became upset that he was being slowed down [by the car ahead of him] and slammed into the other lane of traffic and right into the path of deceased's automobile," and therefore the defendant is just as guilty "as if he had fire a gun indiscriminately and killed him in that manner."
To be considered as evidence inferences drawn from admitted or proven facts must logically flow from the facts so admitted or proved. An illogical or unreasonable inference does not have the force of evidence  it barely has the dignity of speculation or conjecture. It is only those inferences that naturally, logically and lawfully flow from an admitted or proven fact that should ever be considered in the category of evidence on the basis of which judgments of courts must rest. The inferences which the State attempts to draw from the admitted or proven facts in this case do not attain the dignity of evidence which may lawfully be the basis of a conviction. Can it logically be argued that with the defendant's wife and baby sitting in the front seat by him that his act in pulling out of the line of traffic was gross and flagrant and evinced a reckless disregard of human life? If any inference may be drawn from the conduct it must be an inference that the act was the result of momentary lapse of memory, inattention or mistake of judgment, for the simple reason that the defendant knew that such act would place in jeopardy not only his life but the life of his wife and his own flesh and blood sitting beside him on the front seat. This is not the kind of a situation where the alleged gross and flagrant act endangers only the life or safety of another and where the actor and his loved ones would remain unscathed, such as would be the case of firing a gun indiscriminately *316 down a busy street as suggested in the State's argument. When considered in the light of every fact which was before the jury, the inferences attempted to be drawn by the State and upon which their entire argument for affirmance rests are unreasonable, illogical, and do not naturally flow from such evidence.
The lower court erred when it failed to instruct the jury to return a verdict of not guilty.
Reversed.
ROBERTS, C.J., and THOMAS and HOBSON, JJ., concur.