100 So.2d 826 (1957)
Maynard Grady FOWLKES, Appellant,
v.
STATE of Florida, Appellee.
No. 57-117.
District Court of Appeal of Florida. Third District.
October 31, 1957.
Rehearing Denied December 5, 1957.
*827 Carr & O'Quin and Marshall Curran, Miami, for appellant.
Richard W. Ervin, Atty. Gen., and Moie J.L. Tendrich, Special Asst. Atty. Gen., and B. Jay Owen, Asst. Atty. Gen., for appellee.
CARROLL, CHAS., Chief Judge.
The appellant Maynard Grady Fowlkes was informed against in the Criminal Court of Record of Dade County for the crime of manslaughter. The first count of the information charged the defendant with having killed one Charles Andrew Doty with his car while driving it when he was drunk, and the second count charged him with having killed the said Charles Andrew Doty as a result of the operation of his automobile in a culpably negligent manner.
At the conclusion of the presentation of evidence, the county solicitor voluntarily abandoned the first count, and appellant was convicted on the culpable negligence count.
He now insists that the evidence was insufficient to support the verdict of guilt, and that the trial judge erred in refusing to grant a directed verdict in his favor.
The evidence disclosed that at about 7:00 o'clock P.M. on Christmas Eve of 1955, Maynard Grady Fowlkes left the area of the Miami International Airport and drove his automobile southward on LeJeune Road, a two-way six-lane highway; that he became involved in a rear end collision, at the traffic light controlled intersection at Northwest 20th Street, by driving his car into the rear of a taxi cab at a point approximately sixty feet north of the intersection; and that one Charles Andrew Doty, the driver of the taxi cab, was killed in that accident.
There was abundant evidence that Fowlkes had been partying and drinking since noon, and the overall evidence pointed strongly to the conclusion that he was under the influence of liquor. This included evidence that at around 6:00 o'clock P.M. in a bar on Northwest 36th Street they refused to serve him a drink because he was considered intoxicated; and that he blacked out, that is, that he reached a condition in which he suffered a loss of memory and did not recall leaving the bar and getting into his car and driving to the point of the collision, nor anything about the accident itself.
After the evidence was in, and before the presentation of any motions, the county solicitor voluntarily abandoned the count based on intoxication, and the court directed a verdict of Xacquittal on that count. But the court denied defendant's motion for a directed verdict on the second count, based on culpable negligence. A verdict of guilty resulted on the culpable negligence count and the judgment followed. Motion for new trial was denied.
There was little evidence relating to the accident itself, and how it occurred. One witness testified that he was driving south on LeJeune Road; that when he got to a point 180 or 200 feet from the 20th Street *828 intersection he saw the traffic light turn amber and that he slowed down; that at that time defendant's car passed him at a speed which he estimated at 65 or 70 miles per hour, and that the speed of defendant's car was such that when it passed him it shook his car. After testifying about the defendant's car passing him at a high rate of speed his testimony was then limited to identifying the defendant and his car.
That witness did not give any eye-witness account of the accident itself, nor was he asked to do so. Yet the facts of the accident were right before his eyes. After he had testified about the defendant's car passing him at a speed of "65 or 70 miles per hour", the remainder of his testimony on direct examination was as follows:
"Q. Did you later see this vehicle that passed you and got into the accident? A. Yes, sir, after I reported it to the police.
"Q. Was this the same vehicle that passed you at a high rate of speed? A. Yes.
"Q. Did you have occasion to see the defendant at the scene? A. Yes; he was laying out back of the car.
"Q. Did you observe the car he was driving? A. Yes; a 1950 Mercury sedan.
"Q. That is the car that was speeding when it passed you? A. Yes, sir.
"Mr. Hutto: You may inquire."
Another witness testified concerning the accident. He was driving north on LeJeune Road approaching the intersection from the other side. His testimony was far from enlightening. He said:
"A. From my point of view, I was traveling north and did not see anything until I saw debris and dust of some impact to the automobile that went in the air. I didn't think at the time it was too bad an accident and I told my wife 
"The Court: Don't tell what you told your wife.
"A. The car come swerving toward me and I had to slam on the brakes to keep the oncoming car from hitting me, and I went forward to the Mercury car and saw no one in the rear of the automobile, and it was still running, and I wanted to see the occupants in there."
The rest of his testimony dealt with what he did and what he saw after the accident. The investigating officers who testified were able to shed light only on the result, not how it happened, and to indicate condition of the defendant as to intoxication.
One of the investigating officers testified that the point of impact was 60 feet north of the intersection; that both automobiles were in the southbound lane nearest the center of the street; that it was a rear end collision in which the left front portion of the defendant's car came in contact with "the right rear from about the center portion of the taxi cab to the right side of the taxi cab;" and that there were no skid marks before the point of impact.
Fowlkes testified, but could give no evidence about the accident, due to his amnesia which had covered the time of the accident and a considerable period before it.
The law is settled as to what is necessary to be shown to sustain a manslaughter charge based on culpable negligence. Cannon v. State, 91 Fla. 214, 107 So. 360, 363; Savage v. State, 152 Fla. 367, 11 So.2d 778, 779; Preston v. State, Fla. 1952, 56 So.2d 543, 544; Smith v. State, Fla. 1953, 65 So.2d 303, 305; Miller v. State, Fla. 1954, 75 So.2d 312, 313; Hunt v. State, Fla. 1956, 87 So.2d 584, 585. In Preston v. State, supra, the Court said [56 So.2d 543]:
"The `culpable negligence' required to sustain a manslaughter charge must be of `a gross and flagrant character, evincing reckless disregard of human life or of the safety of persons exposed to its dangerous effects; or that entire want of care which would raise the presumption of indifference to consequences; or such wantonness or recklessness or grossly careless disregard of the safety and welfare of the public, or *829 that reckless indifference to the rights of others, which is equivalent to an intentional violation of them.' Savage v. State, 152 Fla. 367, 11 So.2d 778, 779. And excessive speed alone is not necessarily culpable negligence sufficient to sustain a charge of manslaughter. State v. McComb, 33 Wyo. 346, 239 P. 526, 41 A.L.R. 717; State v. Thomlinson, 209 Iowa 555, 228 N.W. 80; State v. Campbell, 82 Conn. 671, 74 A. 927; People v. Gardner, 255 App. Div. 683, 8 N.Y.S.2d 917, 921. In the case last cited, the New York court said that `The test is not satisfied by proof of excessive speed amounting to negligence but by proof of speed of that character  if such was the case  and other circumstances which, as we have seen, together must show a reckless disregard by the accused of the consequences of his conduct and his indifference to the rights of others.'"
Measured by the above definition, the facts in this record construed in the light most favorable to the state are inconclusive, and do not furnish clear support for the verdict and judgment.
The Supreme Court had occasion in a recent case to consider the effect of excessive speed as proof or as an element of proof of culpable negligence of a driver, in Henderson v. State, Fla. 1956, 90 So.2d 447, 448, where the Court said:
"Relying on our definition of `culpable negligence' in Cannon v. State, 91 Fla. 214, 107 So. 360, appellant contends that the evidence showed only excessive speed. He then asserts that under Miller v. State, Fla. 1954, 75 So.2d 312, excessive speed alone is insufficient to sustain a conviction of manslaughter for a homicide resulting from the operation of an automobile. It is true that in Miller v. State, supra, we held that a speed of 40 to 45 miles per hour under the circumstances there evident was not sufficient, standing alone, to sustain the manslaughter conviction. However, we there pointed out that one rate of speed may well be reckless and sufficient to constitute culpable negligence under some circumstances while the same rate under other circumstances would not fall in that category. Koger v. Hollahan, 144 Fla. 779, 198 So. 685, 131 A.L.R. 886. Likewise, in Preston v. State, Fla. 1952, 56 So.2d 543, we held that excessive speed alone is not necessarily culpable negligence sufficient to sustain a charge of manslaughter. In the same case we pointed out that the proof of excessive speed coupled with other circumstances could be sufficient to show a reckless disregard for the safety of others sufficient to sustain a conviction."
In voting for conviction the jury may well have been impressed and motivated by the strong showing that the defendant was under the influence of liquor. On the count based on culpable negligence the jury was entitled to consider evidence bearing on intoxication, as that condition might shed light on defendant's recklessness. See Taylor v. State, Fla. 1950, 46 So.2d 725; Smith v. State, supra, Fla. 1953, 65 So.2d 303, 306; Hunt v. State, supra, Fla. 1956, 87 So.2d 584, 585. In Smith v. State, supra [65 So.2d 303], the Court said:
"* * * It is unlawful to drive a car while `under the influence of intoxicating liquors' but it is not manslaughter if one in such condition runs into and kills another unless `culpable negligence' is shown. We have held that `testimony tending to show that a defendant, charged only with culpable negligence, was under the influence of intoxicants at the time of an automobile collision is admissible, on the theory that a driver so exhilarated is likely to be abnormally reckless.' Taylor v. State, Fla., 46 So.2d 725. Such evidence, however, cannot make an act wanton and reckless that was not otherwise so. It is valuable and useful only to corroborate or render more likely, evidence that is doubtful or disputed."
Thus, in this case there was evidence that it was night, that there was *830 excessive speed with an absence of skid marks, and evidence that the defendant was under the influence of liquor. But the evidence as a whole was inconclusive because of the absence of evidence of other circumstances, such as the nature of the intersection and the lighting conditions there, the traffic at the intersection at the time, the location and visibility of the traffic control light, the color of the traffic light at the time of the collision, the degree of visibility of the taxi cab, whether its lights were on, what lane it was in, what it was doing, and as to whether the defendant's car decelerated or made any other effort to avoid the accident, and if so, what and to what extent. Those and other facts which may readily suggest themselves may not all be possible of establishment by evidence, but some well could be.
In the similar case of Preston v. State, supra, Fla. 1952, 56 So.2d 543, 544, the Court found there was a lack of evidence as to the traffic conditions at the place of an accident upon which it could gauge the effect of excessive speed as constituting culpable negligence. On holding that speculation as to facts could not substitute for direct positive proof, the Court there said:
"In a case of this kind, where the liberty of a citizen is at stake, and where the guilt of the accused must be established beyond a reasonable doubt, a conviction should not be sustained merely upon suspicious circumstances or conjecture."
The evidence in this case is inconclusive in that it is neither consistent with guilt nor inconsistent with innocence. A person's liberty may not be taken away on evidence which is incomplete and which does not measure up to the requirements laid down by the law for conviction. Because of the inconclusive character of the evidence in this case we are impelled to conclude that the ends of justice require that the cause be remanded for a new trial. Stephens v. State, 140 Fla. 163, 191 So. 294; Savage v. State, supra, 152 Fla. 367, 11 So.2d 778; Preston v. State, supra, Fla. 1952, 56 So.2d 543; Maxey v. State, Fla. 1953, 64 So.2d 677; Smith v. State, supra, Fla. 1953, 65 So.2d 303.
Therefore, the judgment below is hereby reversed and a new trial ordered on the culpable negligence count.
Reversed and remanded.
HORTON, J., concurs.
PEARSON, J., dissents.
PEARSON, Judge (dissenting).
No useful purpose would be served by a further discussion of the evidence before the jury in this case. It is enough to state that I find the evidence and the reasonable inferences therefrom are adequate to support the finding of the jury, that the defendant was guilty of a reckless disregard of the consequences of his conduct and an indifference to the rights of others. Accord, Hunt v. State, Fla. 1956, 87 So.2d 584; Henderson v. State, Fla. 1956, 90 So.2d 447; Fort v. State, Fla. 1956, 91 So.2d 637; Johnson v. State, Fla. 1957, 92 So.2d 651.