108 So.2d 473 (1959)
Robert FULTON, Appellant,
v.
STATE of Florida, Appellee.
Supreme Court of Florida.
January 9, 1959.
Rehearing Denied February 17, 1959.
*474 William R. Davenport, Pensacola, for appellant.
Richard W. Ervin, Atty. Gen., and Odis M. Henderson, Asst. Atty. Gen., for appellee.
TERRELL, Chief Justice.
Appellant was tried and convicted on an information charging manslaughter by culpable negligence in the operation of his automobile. A motion for new trial was overruled, he was adjudged guilty and sentenced to confinement in the State penitentiary at hard labor for a period of five years. This appeal was prosecuted from the judgment so entered.
The sole point urged for reversal is whether the evidence is sufficient to support a verdict and judgment of guilty of manslaughter by culpable negligence.
The essential facts precipitating this action are not in dispute and are substantially as follows: Appellant was driving easterly on what is known in Escambia County as Nine Mile Road. The day was clear, it was soon after 3:30 P.M., April 28, 1955, and there was very little traffic on the highway which was straight and unobstructed, had a 200 feet right-of-way and was paved with blacktop 22 feet wide. At the foot of a long incline on the highway there was a bridge the same width as the pavement. Appellant attempted to pass a Pontiac driven by Mary McCart who was accompanied by a companion. Appellant was driving a Ford automobile; as he approached the Pontiac about the middle of the bridge, the right front fender of his Ford struck the left rear fender of the Pontiac causing it to go out of control, sway to the right, strike the bridge twice, travel about 150 feet, turn over three times, then travel 50 feet before it came to rest headed in another direction. From the point the Ford struck the Pontiac, it ricocheted to the left curb of the bridge, went out of control, crossed the road in front of the Pontiac, went down an embankment, thence up the embankment and came to rest right side up approximately 300 feet from the point of impact. It left no skid marks on its path. The driver of the Pontiac was killed as result of the collision.
Appellant grounds his claim for reversal on the contention that the evidence fails completely to show excessive speed or that he was guilty of culpable negligence. He cites a number of cases, among them Cannon v. State, 91 Fla. 214, 107 So. 360; Jackson v. State, Fla.App. 1958, 100 So.2d 839; Miller v. State, Fla., *475 75 So.2d 312, and others to support his contention. I have read these cases but I think they are predicated on such different circumstances that they cannot be said to control the case at bar. In fact if this court has ever prescribed a pattern or formula for the determination of culpable negligence, it had reference to the particular case and was not intended to be general. No such formula could be general because so many and different factors may be involved in culpable negligence. There is nothing mystical about culpability. It comprehends blame, censure or some aspect of erratic conduct. To support manslaughter as used in § 782.07, Florida Statutes, F.S.A., one's conduct must reveal a reckless disregard or indifference for the life, safety or rights of those exposed to its effects, or it must show an indifference to consequences regardless of who is affected. If one takes no account of the fact that others are on the highway and have as much right to be there as he has or is totally oblivious to their rights, his conduct may be culpable.
In addition to the facts heretofore pointed out, the evidence shows that immediately before the accident appellant had consumed a steak dinner, during which and not exceeding two hours before he consumed four bottles of beer. He was driving a dangerous instrumentality, so pronounced by this court nearly forty years ago. How fast he was driving no one can tell, the evidence as to that is in conflict. Some of it says 55 to 60 miles per hour and some says as fast as 80 miles. There is evidence which shows that defendant was "stunned" after the accident and that his breath had on it the aroma of whiskey. It is shown that deceased was driving orderly in her lane or on her side of the highway and since it was 22 feet wide, it is clear that defendant had from 11 to 15 feet of paved highway to pass the Pontiac.
In view of these facts, I think the jury had reasonable ground to assume that defendant's conduct revealed a reckless disregard or indifference for the life, safety and rights of the deceased. I think there was ample showing of indifference to consequences regardless of who was on the highway and that he was oblivious to the presence of deceased. It is conclusively shown that Mary McCart came to her death as a result of defendant's negligent conduct; that he had ample room to pass her in safety and that he was driving over a bridge which of itself should have prompted him to condition his speed to the circumstances which, if he had done, he would have easily passed the deceased and no harm would have resulted. Culpable conduct is generally determined by the results that follow. Speed is not the determining factor. One might drive 90 miles an hour and get by with it if he did not kill or maim someone or a police officer did not pick him up.
In this connection, it is not amiss to call attention to the fact that §§ 317.21 to 317.33, inclusive, Florida Statutes 1955, F.S.A., define certain rules of the road to govern those using the highways and punish those who refuse to observe them. Appellant gave no heed whatever to those detailing one's duty overtaking and passing motor vehicles traveling in the same direction. The very purpose of these and other regulations is to caution motorists to drive carefully to create a wholesome respect for others and their rights on the highways. In addition to this, we are constantly admonished by federal, state, county and local highway authorities, civic clubs, newscasters and others to drive carefully. Motorists should realize that it is a privilege to own a driver's license to traverse the highways and that such a license is not only a badge of care and good character, but that the one who has it respects the rights of others on the highways.
Defendant admits that the accident took place because of his negligence, inattention or mistake of judgment in not allowing clearance enough between his car and that of the deceased when passing her on *476 the bridge, but he contends that his conduct did not constitute culpable negligence. It is not shown or contended that the death of Mary McCart was the result of an unavoidable accident. It is shown on the other hand that she did nothing to cause the accident but that she was driving orderly in her lane of the highway and was an innocent victim of appellant's negligence. One cannot collide with another on the highway in the manner shown here and excuse himself by claiming mistake of judgment in not allowing clearance enough to pass his victim's car. The law makes it his duty to drive at a speed and with such care that his car will always be under control and prevent such errors of judgment. This fact alone, aside from the fact that he lost control of his car and struck deceased's car with such force as to turn it three somersets, shows culpable conduct. The law may excuse a pure accident, but it does not excuse gross and culpable negligence.
It is accordingly shown that appellant wilfully violated the rules of the road; that his conduct revealed a reckless disregard for the right of the deceased on the highway and that he was oblivious to her presence there. There was ample predicate for the verdict and judgment.
It is therefore affirmed.
THOMAS and THORNAL, JJ., and STURGIS, District Judge, concur.
ROBERTS, DREW and O'CONNELL, JJ., dissent.
ROBERTS, Justice (dissenting).
This is an appeal from a verdict and judgment convicting the appellant of manslaughter by culpable negligence in the operation of an automobile.
The accident resulting in the death of the decedent occurred when the appellant attempted to overtake and pass a car being driven by the decedent while the vehicles were on a bridge. There was no traffic on the bridge nor on the highway within eyesight of the collision at the time it occurred. Traffic on the highway was light. The bridge was the same width as the highway, and there were no obstructions to the view while driving along the highway. The speed limit was the same on the bridge as on the highway  at that time, 60 miles per hour. The right front fender of the appellant's car struck a "glancing blow" on the left rear fender of the decedent's car, causing both cars to go out of control and careen along the bridge and beyond it. The appellant said that the back end of the decedent's car appeared to swerve out towards his car at the moment he was attempting to pass it. The appellant's car did not turn over. That of the decedent turned over three times. The decedent was thrown from her car at some point following the impact and died of chest injuries shortly thereafter. Neither the appellant, who was alone in his car, nor the decedent's niece, who was a passenger in her car, received serious injuries  only minor bruises and bumps.
The evidence of the speed at which the appellant was travelling was inconclusive. Nor is the exact cause of the accident clearly shown, although the jury could have inferred that the appellant was negligent in not allowing enough space between his and the decedent's car in attempting to pass and that the tragedy would not have occurred in the absence of such negligence. Such conduct standing alone, however, would seem to be nothing more than an error in judgment and, as such, entirely inadequate to support a manslaughter charge based on culpable negligence. Cf. Miller v. State, Fla. 1954, 75 So.2d 312; Maxey v. State, Fla. 1953, 64 So.2d 677, 678. The appellant had had a couple of beers with his meal shortly before the accident, but there was nothing in the evidence to show that his sobriety was affected by the beer.
*477 The degree of negligence sufficient to support a criminal charge of manslaughter based on "culpable negligence" has been many times stated by this court. See Maxey v. State, supra, and cases cited. And, in all the circumstances here, I am of the opinion that the evidence is not conclusive of appellant's guilt of that degree of negligence sufficient to justify a verdict of guilty of manslaughter.
Here, as in Maxey v. State, supra, the testimony "is neither consistent with guilt nor inconsistent with innocence." This being so, I think the ends of justice would be best served by reversing the judgment and ordering a new trial.
I therefore respectfully dissent.
DREW and O'CONNELL, JJ., concur.