WIGGINTON, Chief Judge.
Appellant was charged in a two count indictment with the offense of manslaughter. The first count is predicated upon culpable negligence in the operation of an automobile, while the second is based upon the operation of an automobile while under the influence of intoxicating liquor. The trial resulted in acquittal on the second count and conviction on the first. From the judgment and sentence of seven years imprisonment in the state prison, defendant appeals.
Defendant raises only two points for our consideration. First, he questions the sufficiency of the evidence to establish culpable negligence. Secondly, he contends that the evidence fails to establish that his negligence was the proximate cause of death.
With the exception of the degree of defendant’s intoxication at the time of the collision, the facts as shown by the record are not in serious conflict. Since defendant was acquitted of the charge of manslaughter by the operation of his automobile while under the influence of intoxicating liquor, whether he had only one drink of whiskey as admitted by him, or two or three highballs earlier in the evening as testified to by the investigating officer, is matérial only insofar as it may be considered to have contributed to the collision.[1]
Defendant was general construction superintendent of a contracting firm engaged in building a large addition to the Buckeye Cellulose Company plant near Perry, Florida. On the day of the fatal collision defendant’s crew had poured a concrete slab, finishing their work late in the afternoon. The slab was not covered for protection against bad weather before the crew quit work for the day. Observing that the weather appeared threatening during the early hours of the evening, defendant left his home in Perry at about 9:30 or 10:00 o’clock that night and drove to the job site where he covered the slab to protect it from rain. While awaiting developments in the weather, defendant entered the construction office where he spent some time doing paper work required for the following day’s work schedule. After again checking the slab covering to determine that it was secure, defendant prepared to return to his home in Perry. By that time it was almost midnight and snow had commenced to fall, a phenomenon rarely experienced in this state. Apparently as fortification against the weather, defendant removed a half pint of whiskey from his automobile, which was later found by the investigating officer, and took one drink before starting back to town. As defendant proceeded northward on the main state highway, snow was falling heavily. As he approached the intersection where the collision was to occur, defendant was traveling between 30 and 40 miles an hour in a 45 mile an hour speed zone. Defendant testified that he was driving carefully and at a slow rate of speed due to a malfunction of his windshield wipers which failed to remove the falling snow fast enough to permit clear vision. Another northbound automobile driven by decedent had reached the intersection ahead of defendant and had stopped for a red *632 traffic light. Defendant had also observed the traffic light first flashing red, amber and then green as he approached the intersection. He looked to his right in an effort to locate the boundary of a crossroad into which he expected to turn in order to reach his home. As he looked back toward the intersection he saw for the first time decedent’s automobile in the traffic lane directly in front of him. At that moment he was in such close proximity to decedent’s car that he could neither turn out of the traffic lane nor stop before colliding with deceased’s car. Whether decedent was preparing to move forward or was actually moving forward at the moment of impact is not made clear by the evidence. At any rate, the force of the impact caused decedent’s automobile to roll a distance of approximately 100 to 125 feet before coming to a stop.
The collision caused decedent’s automobile to burst into flame as a result of which decedent suffered third degree burns to his upper extremities before he could be removed from his car by others who had quickly gathered at the scene. Although decedent’s response to medical treatment was sufficiently satisfactory to allow the commencement of a series of skin grafts, during the second of such skin grafting procedures, about six weeks after the collision, decedent suffered a cardiac arrest necessitating the immediate opening of his chest cavity to permit the massaging of his heart. Despite decedent’s revival and recovery from the cardiac arrest, he subsequently suffered an onset of septicemia which resulted in his death shortly thereafter.
The Florida courts have consistently held that the proof necessary to sustain a conviction of manslaughter by the culpably negligent operation of a motor vehicle must show negligence of a gross and flagrant character, evincing reckless disregard of human life or the safety of persons exposed to its dangerous effects; or that entire want of care which would raise the presumption of indifference to consequences; or which shows such wantonness or recklessness or a grossly careless disregard of the safety or welfare of the public or that reckless indifference to the rights of others which is equivalent to an intentional violation of them.[2] In short, culpable negligence means something more than such simple negligence as would authorize the recovery of mere compensatory damages in a civil action.
When considered in a light most favorable to the State, the most that can be said of the evidence against defendant is that at the time of the collision he was to some degree under the influence of intoxicants and while driving in the nighttime at a lawful rate of speed on his side of an open highway through an unprecedented snow fall, he momentarily diverted his attention from the road in an effort to discern the boundary of a crossroad into which he expected to turn and therefore did not see decedent’s stationary automobile in the traffic lane directly ahead of him until it was impossible to avoid colliding with it.
Evidence that defendant was drinking and was to some degree under the influence of liquor does not constitute proof of culpable negligence. That a jury could infer that because of his drinking defendant was more apt to be heedless, reckless or more daring than he normally would, we do not deny, but this standing alone could not make an act wanton or reckless that would not otherwise be so.[3]
In short, the conclusion is inescapable that defendant’s failure under the circumstances to see decedent’s automobile soon enough to have avoided the ensuing *633 collision, although sufficient to establish civil liability, is wholly insufficient to establish culpable negligence under the manslaughter act.[4] The only lawful inference which can be drawn from the evidence as a whole is that the fatal collision was the result of a momentary lapse or inattention or a mistake of judgment on the part of defendant.[5] Defendant’s negligence is not of such gross and flagrant character, nor does it evince such reckless disregard of human life or show such want of care as to give rise to a presumption of conscious or deliberate indifference to what might result from it, or exhibit a grossly careless disregard of the safety and welfare of the public amounting to an intentional violation of the rights of others.
The remaining point on appeal questions the sufficiency of the evidence to ■establish that defendant’s negligence was the proximate cause of decedent’s death. It cannot be denied but the tragedy in question consisted of a series of most unfortunate events, and the life of decedent would have been spared had any one of the events failed to occur. The rear end collision ■caused by defendant’s momentary lapse or inattention was no different in most respects from numerous similar incidents which occur almost daily throughout our •state. Most such collisions result in little more than bent fenders, a crushed radiator .and an occasional whiplash injury to the ■occupant of the innocent vehicle. In this •case, however, the collision caused decedent’s automobile to catch on fire which resulted in serious burns to the upper extremities of decedent’s body. Decedent’s ■satisfactory recovery was interrupted by an ■unexplained cardiac arrest which in turn induced an onset of septicemia. It was this latter condition which proximately caused •death. Although it cannot seriously be contended that the foregoing series of events ■could have been reasonably foreseen as the natural and probable consequences of a rear end automobile collision, we nevertheless are forced to the conclusion that it was the negligent act of defendant which ultimately resulted in decedent’s death.
Reversed and remanded for new trial.
STURGIS and CARROLL, DONALD, JJ., concur.

. Jackson v. State, Fla.App.1958, 100 So. 2d 839.

. Carraway v. Revell, Fla.App.1959, 112 So.2d 71.

. Jackson v. State, see note 1; Fowlkes v. State, Fla.App.1957, 100 So.2d 826; Clowney v. State, Fla.App.1957, 97 So. 2d 316; Smith v. State, Fla.1953, 65 So.2d 303.

. Maxey v. State, Fla.1953, 64 So.2d 677; Williams v. State, Fla.1951, 54 So.2d 66.

. Miller v. State, Fla.1954, 75 So.2d 312.