ALLEN, Chief Judge.
An information was filed on March 13, 1959, in the lower court charging appellant, as defendant, with manslaughter by culpable negligence in the operation of an automobile. The defendant was convicted by the jury and on July 10, 1959, sentenced to serve six months to three years in the state prison. Thereafter this appeal was taken.
The defendant was operating his Ford automobile in a westwardly direction on Broadway Street in the City of Tampa. William Andrew Howington was driving a Pontiac automobile in which Daisy How-ington was riding, in an eastwardly direction on Broadway Street. The defendant, at the time of the accident, was attempting to pass an automobile driven by Hiram J. McClelland which had entered Broadway Street one block from the accident and which car the defendant attempted to pass. Broadway Street is a 30 foot wide two lane street. The collision between the cars took place on a clear day and while the streets, were dry. As a result of the collision, Mrs. Howington suffered severe injuries from which she died.
Rev.. Howington testified that he was proceeding in an easterly direction on East Broadway Street at approximately 30-35' miles per hour in a 25 mile per hour zone, when he observed an auto, headed in a westerly direction, pull out from behind another auto (also headed in a westerly direction) and proceed to enter the traffic lane in which Howington was traveling. How-ington stated that when he saw the defendant’s auto was almost on him, he applied his brakes and “tried to get off the highway.” After the impact, the defendant’s auto came to rest in the eastbound traffic lane and headed in an easterly direction. On cross-examination Howington stated that he did not take his foot from the brake pedal until he was struck by defendant’s auto; that he did not believe defendant “caught up with” or passed the auto that defendant was attempting to overtake • that he couldn’t say how far he was from defendant’s auto when he first saw it; but that it might have been “oh, maybe three Of four car lengths, or something like that * * * »
Hiram J. McClelland, the driver of the auto which defendant was attempting to pass, stated that he accelerated to about 40 miles per hour and then saw the defendant’s auto approaching from the rear at a “terrific rate of speed”; that he saw the Howington’s auto approaching from ahead in the opposite lane; and that defendant’s auto crossed into the lane of oncoming traffic and struck the Howington auto. McClelland also stated that defend *554 ant was traveling at approximately SO to 55 miles per hour at the time and that Howington was traveling at approximately 30 to 35 miles per hour.
Officer Ronald E. Barber, testified that the Howington auto left skid marks of 39 feet prior to impact and then upon striking the defendant’s auto, knocked the defendant’s auto backward in an easterly direction an additional 39 feet.
Tampa police officer Rogers testified for the State and identified various exhibits. On cross-examination he stated that the collision occurred on a heavily traveled road in the daytime on a clear day. In rebuttal for the State, Rogers stated that the minimum speed a car would have to be traveling to leave skid marks of 39 feet upon coming to an abrupt stop would be 29.05 miles per hour.
Clayton Briggs, a traffic patrolman, testified that on February 18, 1959, the defendant voluntarily accompanied him to the police station and signed a statement concerning the accident. After establishing the admissibility of this statement out of the presence of the jury, it was introduced into evidence.
In this statement, the defendant admitted that he and his companion had visited several bars on the day of the accident; that he had consumed “four or five beers” ; that he was driving in a westerly direction on Broadway Street but could not remember anything concerning the accident; that he was traveling 30 miles per hour; that he did not see Howington’s auto, nor did he apply his brakes; and that therefore he could not have done anything to prevent the collision. The defendant also stated that the weather was clear and the streets were dry, but that he did not believe he was traveling at an excessive rate of speed.
Questions involving degrees of negligence continually puzzle trial courts as well as appellate courts. Where is the borderline from which you leave simple negligence and enter the field of gross negligence ? What additional facts are necessary to “open sesame” into the field of culpable or wanton and wilful misconduct? In Carraway v. Revell, 116 So.2d 16, the Supreme Court of Florida, speaking through Mr. Justice Drew distinguished many decisions of this State involving degrees of negligence. In another recent case, Fulton v. State, Fla.1959, 108 So.2d 473, the majority of the Supreme Court, in an opinion by Justice Terrell, then Chief Justice, re-emphasized that no general formula could be devised for the determination of what facts constituted culpable negligence because of the numerous factors that must be considered each time the issue arises.
Driving at excessive speed may only constitute simple negligence, but add thereto: being on the wrong side of a crowded thoroughfare; after imbibing several drinks of an alcoholic beverage, you may progress from simple negligence to gross negligence to such negligence as would constitute culpable or wilful and wanton misconduct — “from Scylla you may be engulfed by Charybdis.”
The appellant alluded on oral argument and in his brief to the case of Miller v. State of Florida, Fla.1954, 75 So.2d 312, to support the plea for reversal in this case. Such case is persuasive. The Supreme Court reversed a manslaughter conviction holding the evidence insufficient to constitute manslaughter by culpable negligence. The Court stated that death must result from conduct of a gross and flagrant character, evincing a reckless disregard of human life, or of safety of persons exposed to its dangerous effects, or there must be an entire want of care which would raise a presumption of conscious indifference to the consequences or which shows wantonness or recklessness or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to rights of others which is equivalent to an intentional violation of them.
The evidence in the Miller case, supra, showed that the accident occurred on a dry, *555 clear afternoon. The defendant was traveling east in a Buick automobile and the deceased was driving west in his Plymouth car. The deceased pulled off to the side of the highway on the north shoulder with two wheels, the right front and the right rear wheels, for a distance of 50 feet and then traveled for a distance of 24 feet with all wheels off the pavement, before the point of impact, the brakes being applied the entire distance. The point of impact was on the north shoulder of the highway at a time when both cars were entirely off the pavement of the highway. The State relied upon the testimony of a State’s witness to the effect that the defendant, right after the accident, stated: “I pulled out to pass a car. I couldn’t make it so I took to the ditch. Oh! If the other fellow had only stayed on the highway.” The defendant testified that he was traveling between 40 and 45 miles per hour at the time of the accident and he stated that a dog that was in the back seat of his car suddenly jumped into the front seat distracting him and causing him to lose control of the car which went into the north lane of traffic. The Court stated that the jury disregarded the reasons, which they had a right to do, of the defendant as to why he pulled off the road, but that under all the evidence adduced such conduct was not sufficient to sustain a conviction of manslaughter. The Court, however, in its opinion stated [75 So.2d 315]:
“Our decisions under the manslaughter statute fail to indicate that the evidence, in this case is sufficient to sustain the conviction. In cases under that statute upholding convictions of manslaughter involving an accident in which defendant was on the wrong side of the road, there were circumstances different and in addition to those here, which indicated a rashness of action on the part of the defendant not shown by the evidence in this record. For example in Lipsey v. State, 154 Fla. 32, 16 So.2d 439, there was darkness and dense fog and the defendant could see only 30 feet ahead yet he drove to the left of the highway and struck deceased’s oncoming truck and then traveled 100 feet before coming to a stop, wrecking the truck and killing four persons. In Hyman v. State, 152 Fla. 446, 12 So.2d 437, there was evidence that defendant was drunk at the time he turned left into the path of deceased coming from the opposite direction on a motorcycle. In Johnson v. State, 148 Fla. 510, 4 So.2d 671, the defendant had gone thirty hours without sleep, knew he was in a stupor and had fallen asleep shortly before he drove his truck to the opposite side of the road hitting the deceased. In Franklin v. State, 120 Fla. 686, 163 So. 55, the defendant was driving at a high rate of speed in the nighttime on the wrong side of the road and struck and overturned a truck which had pulled off the road.”
Another case relied upon by the appellant is that of Grimley v. State, Fla.App.1959, 114 So.2d 630, 632. The gist of this case as stated by Chief Judge Wigginton is as follows:
“When considered in a light most favorable to the State, the most that can be said of the evidence against defendant is that at the time of the collision he was to some degree under the influence of intoxicants and while driving in the nighttime at a lawful rate of speed on his side of an open highway through an unprecedented snow fall, he momentarily diverted his attention from the road in an effort to discern the boundary of a crossroad into which he expected to turn and therefore did not see decedent’s stationary automobile in the traffic lane directly ahead of him until it was impossible to avoid colliding with it.”
We have reread the Grimley v. State, supra, opinion but do not consider that the instant case would be controlled by said opinion as there are several elements *556 present in the instant case which were not involved in the Grimley case.
In addition to the factors previously discussed, evidence of appellant’s consumption of alcoholic beverages prior to the accident was properly submitted for the jury’s consideration on the theory that a driver so exhilarated is likely to be abnormally reckless. In Cannon v. State, 91 Fla. 214, 107 So. 360, 362, the Supreme Court, in its opinion, said:
“It was permissible, as shown by some of the cases above cited, to allow the state to introduce evidence showing or tending to show that the defendant was under the influence of intoxicating liquor at the time the deceased was struck and injured, or that she was in that condition so shortly thereafter as to afford a reasonable inference that such condition existed at the time of the injury. See, also, 1 Wigmore on Evidence (2d Ed.) 235. This was admissible in support of the charge of culpable negligence, upon the theory that, ordinarily, persons under the influence of intoxicants to any considerable degree, though not actually intoxicated or drunk, are more apt to be heedless, reckless, and daring than when free from such influence. Hobbs v. State, supra [83 Fla. 480, 91 So. 555]; Meier v. State, supra [87 Fla. 133, 99 So. 124].”
In Taylor v. State, Fla.1950, 46 So.2d 725, the Supreme Court affirmed a conviction of manslaughter. In the opinion written by Mr. Justice Thomas (now Chief Justice), it is stated:
“It seems to us that there is no need to detail the circumstances surrounding the collision of the two cars. We shall dismiss this question by stating simply that there was abundant proof to support a conclusion that the appellant was driving at an excessive rate of speed on a curved highway where it was crossed by an overpass of a railroad; that he struck head-on the car occupied by Wellin as it traveled in its right-hand lane; and that immediately after the accident witnesses determined that appellant had recently been drinking some alcoholic beverage.
* * * * * *
“Even assuming that the references to liquor in this count presented no element of that offense, still it has been held by this court that testimony tending to show that a defendant, charged only with culpable negligence, was under the influence of intoxicants at the time of an automobile collision is admissible, on the theory that a driver so exhilarated is likely to be abnormally reckless. * * * ”
In the case of Williams v. State, Fla.1951, 54 So.2d 66, the Supreme Court in another opinion by Mr. Justice Thomas, reversed the conviction of the defendant of manslaughter and the Court, said:
“We will now relate the circumstances of the unfortunate occurrence as they appeared to the state’s witnesses. A light rain was falling making the highway slippery. The truck was traveling north at a speed variously estimated from 45 to 60 miles per hour. The car bearing the unfortunate victim was proceeding slowly south. When the vehicles were about a city block apart, the truck began to swerve or skid and eventually turned cross-ways directly in the path of the automobile. As the vehicles approached each other, the driver of the car, evidently noticing that the truck was swerving or skidding reduced speed and drove to the berm so that the car was off the road at the time of the impact.
“As we said in the beginning, the only charge was driving in a culpably negligent manner, none that the driver of the truck was intoxicated. The *557 state introduced positive evidence that there was no indication of the truck driver’s having imbibed intoxicating liquor. We mention this fact because we have held, Young v. State, [141 Fla. 529], 142 Fla. 361, 195 So. 569, that even in the absence of a count charging a defendant with causing death by driving an automobile while intoxicated, the state may introduce testimony that a blameworthy driver was under the influence of intoxicating liquor because one in that condition is more inclined to recklessness.”
In Young v. State, 141 Fla. 529, 142 Fla. 361, 195 So. 569, 570, the Supreme Court reversed the lower court in a culpable negligence case because a certain statement was made by the prosecuting attorney. Among charges made was that the defendant was a drunkard. The Court, in its opinion, said:
“It is true that in the case of Cannon v. State, 91 Fla. 214, 107 So. 360, and later in Graives v. State, 127 Fla. 182, 172 So. 716, we held that in a prosecution for manslaughter by reason of culpable negligence testimony was admissible to show that the defendant was under the influence of intoxicating liquor on the theory that •one in such condition would be more inclined to recklessness and daring.
“In the instant case there was evidence that the plaintiff in error had drunk beer in moderate quantities and, of course, the solicitor was justified in discussing before the jury the effect of this indulgence on her actions at the time of the alleged crime. However, this was not just cause for him to brand her as a drunkard. There was no testimony that her conduct warranted such a designation nor was there testimony from which that could he fairly deduced.
“Under the information in this case it was incumbent upon the State to prove beyond a reasonable doubt that the defendant was guilty of causing death by culpable negligence and the only purpose to be served in introducing testimony of indulgence in alcoholic liquors was to show that her recklessness, carelessness or negligence was accentuated because of the influence of the beverage. This did not warrant remarks to the jury that she was in fact at the time of the collision a drunkard.”
For emphasis, we refer again to the recent case of Fulton v. State, Fla.1959, 108 So.2d 473, 474, wherein Justice Terrell, as Chief Justice, stated:
“Appellant grounds his claim for reversal on the contention that the evidence fails completely to show excessive speed or that he was guilty of culpable negligence. He cites a number of cases, among them Cannon v. State, 91 Fla. 214, 107 So. 360; Jackson v. State, Fla.App.1958, 100 So.2d 839; Miller v. State, Fla., 75 So.2d 312, and others to support his contention. I have read these cases but I think they are predicated on such different circumstances that they cannot be said to control the case at bar. In fact if this court has ever prescribed a pattern or formula for the determination of culpable negligence, it had reference to the particular case and was not intended to be general. No such formula could be general because so many and different factors may be involved in culpable negligence. There is nothing mystical about culpability. It comprehends blame, censure or some aspect of erratic conduct. To support manslaughter as used in § 782.07, Florida Statutes, F.S.A., one’s conduct must reveal a reckless disregard or indifference for the life, safety or rights of those exposed to its effects, or it must show an indifference to consequences regardless of who is affected. If one takes no account of the fact that others are on the highway and *558 have as much right to be there as he has or is totally oblivious to their rights, his conduct may be culpable.” (Emphasis added.)
The facts in Fulton v. State, supra, as appear in the Court’s opinion, are as follow: The appellant was driving easterly in the daytime with little traffic on the highway which was straight and unobstructed, had a 200 feet right-of-way and was paved with blacktop 22 feet wide. At the foot of a long incline on the highway there was a bridge the same width as the pavement. Appellant attempted to pass a Pontiac car. As he approached the Pontiac about the middle of the bridge, the right front fender of his Ford struck the left rear fender of the Pontiac causing it to go out of control, sway to the right, strike the bridge twice, travel about 150 feet, turn over three times, then travel 50 feet before it came to rest headed in another direction. It left no skid marks on its path. The driver of the Pontiac was killed as a result of the collision. There was evidence that immediately before the accident appellant had consumed a steak dinner, during which and not exceeding two hours before he consumed four bottles of beer.
There was conflicting evidence of speed ranging from 55 to 80 miles per hour. Also evidence that the defendant had an aroma of whiskey on his breath.
The Court, in its opinion in Fulton v. State, supra, commented on the Florida statutory rules of the road governing those used on the highway. The Court then concluded the opinion stating:
“It is accordingly shown that appellant wilfully violated the rules of the road; that his conduct revealed a reckless disregard for the right of the deceased on the highway and that he was oblivious to her presence there. There was ample predicate for the verdict and judgment.”
The above opinion drew a dissenting opinion, which was concurred in by two members of the Court.
We have previously given the primary evidence that the State relied upon to obtain the conviction in the instant case. Summarized the testimony which the jury could have believed from the evidence adduced was as follows: That the appellant, while driving his car westwardly on Broadway Street in the City of Tampa, a well traveled street, pulled out into the wrong lane of travel to pass a car and collided headlong into an approaching car driving in its proper lane of travel, which resulted in the death of one of the occupants; that the appellant was exceeding the speed limit of the city at the time of the collision; that it appeared from a statement which he had given to a police officer that he and his companion had visited several bars on the day of the accident, had consumed four or five beers, and could not remember anything concerning the accident; that he did not see the approaching car, and that he did not apply his brakes.
From the statement made by the appellant, the jury could have concluded that, when approaching the car in which the deceased was riding, the appellant, though on the wrong side of the street, either was not looking ahead through carelessness or did not see the car because of the influence of the alcoholic beverages which he had imbibed. It is true that the record does not divulge any testimony that the appellant was intoxicated. It can be seen, however, from the cases hereinbefore cited, the effect that the consumption of alcoholic beverages may have on the party who has indulged in these drinks while negligently driving an automobile and committing other acts of negligence.
We must hold under the facts of this case that the jury had sufficient evidence from which they could and did find the defendant guilty of culpable negligence.
*559 The appellant also assigns as error the failure of the lower court to charge upon circumstantial evidence. He quotes from a decision of this court, Jackson v. State, Fla.App.1958, 107 So.2d 247, 251, as authority for the rule:
“ * * * Where the prosecution relies upon circumstantial evidence a proper charge on circumstantial evidence should be given by the Court”
It should be noted, however, that in Jackson v. State, supra, this court said:
“Points II and 11(a) we shall discuss together. The evidence in this case was mostly direct, not circumstantial evidence. A study of the record shows that the State relied upon direct evidence for conviction. Where the prosecution relies upon circumstantial evidence, a proper charge on circumstantial evidence should be given by the Court. In the case of Leavine v. State, 1933, 109 Fla. 447, 147 So. 897, 905, the Supreme Court said:
“ ‘The rule, however, is generally accepted that because of the nature of circumstantial evidence in which an inference affecting guilt is drawn from collateral facts which have a natural or generally recognized relation to the inference to be drawn, the court should instruct upon the law relating to such evidence where the prosecution relies solely or substantially upon such evidence. See 16 C.J. 1008. To be available to the accused, however, he should specially request such an instruction. See 16 C.J. 1058. The above rule is supported by many authorities. State v. Smith, Mo.Sup., 190 S.W. 288; Miller v. State, 88 Tex.Cr.R. 69, 225 S.W. 379, 12 A.L.R. 597; Fuller v. State, 98 Tex.Cr.R. 426, 265 S.W. 1033.’
“We do not deem it necessary to pass upon the legal sufficiency of the instruction quoted in our Point 11(a), since we are of the opinion that the refusal of the court to so charge after the evidence in this case, which shows that the bulk was conflicting, direct evidence, was not prejudicial.”
We do not consider that the lower court erred in not charging on circumstantial evidence in the instant case as the State relied on direct evidence and not circumstantial evidence primarily in its prosecution of the case.
Finding no error we affirm the lower court.
Affirmed.
SHANNON, J., and MORROW, R. O., A. J., concur.