MELVIN O. GRAIVES v. STATE.

172 So. 716.
Division B.
Opinion Filed February 24, 1936.
On Rehearing February 12, 1937.

*John S. Byington,* and *John D. Broome,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, and *Roy Campbell,* Assistant, for the State.

BUFORD, J.—The writ of error brings for review a judgment of conviction on two counts of an information, each charging manslaughter.

The first count is under Section 5563 R. G. S., 7749, C. G. L., as amended by Chapter 11809, Acts of 1927.

The second count is under Section 5039 R. G. S., 7141 C. G. L.

The plaintiff in error has submitted nine (9) questions to be determined by the Court.

The first question is:

"Did the instructions to the jury on the proposition of excusable and justifiable homicide, in a case for manslaughter by negligence, prevent proper consideration by the jury of the real issues which they were to try?"

The Court's charge in regard to excusable and justifiable homicide was not erroneous, but, on the contrary, in view of the provisions of Section 5039 R. G. S., 7141 C. G. L., it was the duty of the Court to instruct the jury as to justifiable and excusable homicide. There is no complaint that the Court refused to give any instructions which were requested by the defendant in this regard and, therefore, the defendant is not in position to complain if in his opinion the instructions given by the Court in this regard were not as full as he would like to have had them be.

The second question is:

"Is contributory negligence of others a circumstance to be considered by the jury under tendered instructions, so the jury could determine whether death was or was not caused by an unlawful driving or grossly negligent act of defendant?"

This question has been determined adversely to the contention of the plaintiff in error in Austin v. State, 101 Fla. 990, 132 Sou. 491.

The third question is:

"In a case for manslaughter by negligence, where defendant is on trial for the killing of two persons, is it proper to admit evidence of the death of others, growing out of the same accident?"

The record shows that four persons were killed at the same time and by the same means. Two of them were B. T. Rawlins and Annie Rawlins. In telling of the circumstances, it was necessary for the witness to tell of what happened there, and, therefore, the record showed that other persons were killed at the same time. There was no error committed by admitting that testimony in evidence. It was a part of the *res gestae.*

The fourth question is:

"Did the general instruction upon the question of intoxication prejudice defendant and instruct the jury, in effect, that it must be found as a fact that defendant was not engaged in an unlawful act before they should acquit him?"

We do not find in the record any requested charge by which the trial judge was requested to instruct the jury any further in regard to intoxication than he had instructed them in the charges which are complained of and made the

basis for assignments of errors numbered 9, 11, 14 and 15. The charges were entirely correct as far as they went and, if defendant wished the court to instruct further, the request should have been made in writing at the time.

The fifth question is as follows:

"Did the admission into evidence of State's Exhibit No. '5,' consisting of a purse and unopened pint flask of liquor found on the body of the dead colored girl, prejudice the jury against the defendant, and was it error to admit the same into evidence on the trial?"

The main objection is to the fact that a pint of liquor found on the dead woman who had been in the automobile with defendant was offered in evidence. That, too, was a part of the *res gestae* and no reversible error was committed by its introduction before the jury. Counsel cites the case of Duke v. State, 106 Fla. 205, 142 Sou. 886, in support of his contentions. There is nothing in that case which has any bearing on the question here involved.

The Alabama case of Patterson v. State, 23 Ala. App. 428, 126 Sou. 420, is not at all in point either.

The sixth question is:

"Did the proof submitted by the State show beyond reasonable doubt that the conduct of defendant was reckless, and did it show such a degree of culpability as to amount to gross neglect on his part?"

A careful perusal of the evidence shows that the proof was ample to sustain the finding of the jury that the defendant was guilty of culpable negligence in the manner in which he was driving and handling the automobile at the time the accident occurred.

Question number seven is as follows:

"Was not the defendant entitled to the tendered instruction that if the jury believed the accident was the result of

inadvertence, not amounting to culpability, or what is termed an accident, then they should find the defendant not guilty?"

This question is founded upon the refusal of the Court to give charges numbered 4, 6, 8, 9, 12 and 13. Neither of these charges correctly stated the law and the principles of law attempted to be covered by each had been sufficiently covered by the general charge given by the court.

The eighth question is as follows:

"Was it proper to recharge the jury, after it had retired to consider the verdict, without advising counsel of its intention to do so?"

There is nothing in the record to show that there was any improper conduct on the part of the Court in recharging the jury as suggested in this question. The record shows that the jury returned into court an improper verdict and thereupon they were instructed to return to the jury room and consider, deliberate and return to court a verdict indicating upon which count or counts of the indictment the verdict was based.

A second verdict return was likewise not received by the Court and the jury was again instructed in this regard. Whereupon the jury again returned to its room and after deliberation returned a verdict finding defendant guilty under both counts of the indictment which was evidently the intent of the jury to have done as the two former verdicts read: "We, the jury, find the defendant guilty as charged. So say we all."

Question number nine is as follows:

"Is the verdict of the jury, finding the defendant guilty of both counts of the indictment, supported by the evidence adduced at the trial?"

We think the evidence amply sufficient to have warranted the jury in finding defendant guilty on both counts of the indictment. There was no motion made at any stage of the trial to require the State to elect upon which count of the indictment it would stand. The evidence was sufficient to warrant the jury not only in determining that the defendant was intoxicated while driving the automobile at the time it came into collision with the other automobile, the result of which collision was the death of the parties named in the indictment, but it was also sufficient to warrant the jury in finding that the defendant was not only intoxicated at that time but that he was also guilty of culpable negligence in the manner in which he was operating the automobile on the public highway, which careless operation resulted in the death of the parties named.

The judgment should be affirmed.

It is so ordered.

Affirmed.

ELLIS, P. J., and TERRELL, J., concur.

WHITFIELD, C. J., and BROWN, J., concur in the opinion and judgment.

DAVIS, J., concurs specially in the conclusion.

DAVIS, J. (concurring specially in the conclusion).—I concur in the conclusion on the authority of our harmless error statute (Sec. 4499 C. G. L., 2812 R. G. S.) as applied to the conviction under the first count (driving while intoxicated) of the indictment. I dissent from the view that Austin v. State, 101 Fla. 990, renders a consideration of contributory negligence on the part of the opposite driver immaterial in a criminal case as a defense to the charge of criminal homicide through culpable negligence. This is so because it has been judicially held by respectable authority that criminality cannot be affirmed of every lawful act care-

lessly performed and resulting, because of some degree of carelessness, in the death of another. See: Fitzgerald v. State, 112 Ala. 34, 20 So. 966. Furthermore, it seems to me to be the height of judicial absurdity to say that the law may properly take from a man ten years of his personal liberty for a negligent act that it would not take from him ten dollars of his money were he sued in a civil action and therein interposed his permissible plea of contributory negligence as a defense to the money demand. It seems to me that contributory negligence, which is defined as "conduct on the part of the opposite party which falls below the legal standard to which he should conform for his own protection, and which is a legally contributing cause, *co-operating* with the negligence of the defendant in bringing about the harm" (A. L. I. Torts, page 1227) is as good defense for liberty as it is for dollars in a case like this.

## On Rehearing

BROWN, J.—Petition for rehearing was granted in this case and upon such rehearing the case has been very earnestly and ably argued.

Plaintiff in error, a young negro man, was convicted in the Circuit Court of Volusia County of the crime of manslaughter and sentenced to ten years imprisonment in the penitentiary. The indictment contained two counts. The first charged manslaughter resulting from the operation of an automobile by the defendant while intoxicated. The second charged manslaughter by the culpably negligent operation of an automobile. The verdict was a general verdict of guilty on both counts.

On the night of July 4, 1935, at about eleven o'clock, the defendant was going north from Port Orange to Daytona Beach, driving a Cadillac automobile on a main public high-

way between those points. Several of his colored friends were in the car with the defendant. The car had been loaned to the defendant by his employer. It was a holiday and there was considerable traffic on the road. There had been fireworks at Daytona Beach that night and the traffic south from Daytona Beach on the Port Orange road was unusually heavy. While so proceeding north on the right hand side of the road and when within a short distance of Daytona Beach, a disastrous collision took place, in which defendant's car was involved, with most tragic and lamentable results. Four persons were killed, Mr. B. T. Rawlins and Annie Rawlins, his wife, and James Rawlins, their son, who were coming south in a Chevrolet car, and Beulah Boland, a colored woman who was riding in the car which the defendant was driving. James Rawlins lingered for several days before death took place; his parents were killed almost instantly.

The contention of the defendant was, and most of the testimony tended to show, that just before the collision a Plymouth car swung out of the line of the southbound traffic, evidently trying to pass the car in front of it, and struck the Cadillac car driven by the defendant, knocking the left front wheel off and causing the Cadillac car to swerve to the left hand or west side of the road and into the Chevrolet car in which the Rawlins family were riding. The driver of the Plymouth car testified that there was plenty of room for him to pass, but two white men who lived near by and came up after they heard the crash testified that the marks on the pavement where the accident occurred showed that the defendant was driving on his, the right side of the road going north and was at all times, before the collision, on the east side of the center line of the road, and that the marks indicated that the Plymouth

and Cadillac came in contact with each other at a point ten of twelve inches east of the center of the road. The defendant and several of his companions in the car testified that he was well on his side of the road until struck by the Plymouth car, which suddenly came out of the line of southbound cars a short distance ahead of him. The marks on the road made by the left front axle of the Cadillac car, which came down on the road when the wheel came off, also began east of the center of the road. The defendant testified that he was knocked unconscious when the Plymouth car ran into the left side of his car and did not know what happened after that. The testimony indicates that the cars coming south were traveling at the rate of forty or forty-five miles an hour and that the defendant's car, going north, was traveling at about thirty-five or forty miles per hour. The testimony indicates that the driver of the Plymouth car had already passed several cars on his way south from Daytona Beach and the testimony also tends strongly to show that this terrible accident would never have happened if the driver of the Plymouth car, in his effort to pass another car in front of him, had not driven out of the line of traffic and into the path of the on-coming northbound Cadillac, and thus sideswiping it in such a way as to cause it to swerve sharply around to the left and directly into the southbound Chevrolet car. The only evidence tending directly to show that the defendant was guilty of any actual negligence in his operation of the Cadillac car was the testimony of the driver of the Plymouth car. His testimony as shown by the transcript is rather vague and ambiguous, but seems to be to the effect that he expected the driver of the Cadillac to get by, that he had a wide road and plenty of room to pass; that when he saw that the driver of the Cadillac was not going to "get over" he "cut,"

but before he, the driver of the Plymouth, had a chance to "cut" or "get over," the Cadillac car hit his front hub cap and fender, knocking the Plymouth around and then running on and into the Chevrolet car which had been behind the Plymouth. The jury might have considered that this testimony was inferentially supported by the testimony of several witnesses tending to show that the defendant was intoxicated at the time.

But the testimony as a whole creates the impression that the principal cause of this tragedy was the effort of the driver of the Plymouth car to pass the car in front of him, and thus suddenly driving into the path of the closely approaching northbound car. While it is possible that the defendant, if he had exercised that vigilance and alertness which one driving a car at night should exercise, might have avoided the collision with the Plymouth car which suddenly appeared in dangerous proximity ahead of him, especially if the road was wide at that point and there was plenty of room to dodge the on-coming car by a quick swerve to the right, yet it is a serious question whether the evidence shows that gross degree of negligence which constitutes culpable negligence within the meaning of the statute, Section 7141 C. G. L., which provides that the killing of a human being by the culpable negligence of another, in cases where such killing shall not be justifiable or excusable homicide or murder, shall be deemed manslaughter.

Of course, if the drivers of both cars were guilty of criminal negligence which proximately contributed to causing the death of these innocent and unsuspecting people, it would be no defense to either one that the other contributed to causing the dire results. Where a person's injury or death is caused by the concurring proximate negligence of two other persons, both of the latter are legally responsible.

Seaboard A. L. Ry. Co., 94 Fla. 571, 113 So. 716. If on the other hand the driver of the Cadillac car was driving on the proper side of the road and without any fault on his part, the Plymouth car came out of line and knocked the left front wheel off of the Cadillac and caused it to swerve into and hit the Chevrolet car, which was just behind the Plymouth, the proximate cause of the death of the persons in the Chevrolet car would have been the negligence of the driver of the Plymouth car. And if the evidence justified this conclusion, the jury should have found the defendant not guilty under the second count. But if in spite of the negligence of the driver of the Plymouth car, the defendant driver of the Cadillac car was also guilty of negligence which proximately contributed to causing the death of these unfortunate people, he also would be guilty, and the contributory negligence of the driver of the Plymouth car would be no defense. So, as we see it, the question of contributory negligence cuts very little figure in this case. There was no evidence of any negligence whatever on the part of the driver of the Chevrolet car.

As was said by Mr. Justice BUFORD in the case of Austin v. State, 101 Fla. 990, 132 So. 491:

"Whether or not the driver of the automobile in which the child was a passenger was guilty of negligence is immaterial in this case. 29 C. J. 1155 and cases there cited. If the accused had been guilty of that degree of negligence which would cause him to be criminally liable for the death of the child, in fact that another party was also guilty of criminal negligence in connection with the unfortunate occurrence would not relieve the accused from such criminal liability. However, we do not think that criminal liability attaches where circumstances and conditions beyond the control of the accused caused him against his will to be in

position and under the conditions which resulted in the unfortunate death of the child."

Even if said second count, the culpable negligence count, had been the only count in the indictment, the evidence tending to show that the defendant was intoxicated or under the influence of intoxicating liquor at the time the collision occurred, or that he was in that condition so shortly thereafter as to afford a reasonable inference that such condition existed at the time of the injury, was admissible in evidence in support of the charge of culpable negligence upon the theory that, ordinarily, persons under the influence of intoxicating liquors to any considerable degree, whether actually intoxicated or drunk, or not, are more apt to be heedless, reckless and daring than when free from such influence. See Cannon v. State, 91 Fla. 214, 107 So. 361, and cases cited.

As we have seen, the first count of the indictment charged manslaughter by the operation of an automobile by the defendant while intoxicated. This count was drawn under Section 7749 C. G. L. (Section 5563, Rev. Gen. Stats., as amended by Chapter 9269, Acts of 1923, and Chapter 11809, Acts of 1927), which provides that: "If the death of any human being be caused by the operation of a motor vehicle by any person while intoxicated, such person shall be deemed guilty of manslaughter and on conviction be punished as provided by existing law relating to manslaughter."

When the trial court instructed the jury that it was not necessary to prove culpable negligence in addition to intoxication, under the first count of the indictment, he charged them correctly. In the case of Cannon v. State, *supra*, it was said:

"It is true that Chapter 9269, above referred to, amending Section 5563 of the Revised General Statutes, makes

it a misdemeanor for any person 'while in an intoxicated condition or under the influence of intoxicating liquors to drive' any automobile or motor vehicle on the streets or highways of this state, but it is only where death results from the operation of a motor vehicle by a person 'while intoxicated' that is defined as manslaughter. In this connection, the words 'under the influence of intoxicating liquors' are omitted. The felony lies not in the driving of an automobile *negligently* while intoxicated, or under the influence of intoxicants but in the killing of a person 'by the operation of a motor vehicle while intoxicated,' and in such case the question of culpable negligence in the driving of the automobile is not made an element of the crime. No doubt the lawmakers based this statute upon the proposition that it is criminal negligence for a person in an intoxicated condition to attempt to drive an automobile upon the highways of this State, and that, if death results to any person while so doing, such initial negligence will be imputed to the act itself, and the driver held guilty of manslaughter."

The defendant and several of his companions who were with him in the Cadillac automobile, testified that he had not been drinking at all and was not intoxicated at the time of the collision. But one of the witnesses testified that he arrived at the scene of the collision a few minutes after it occurred and found the defendant, who had been injured to some extent, lying on the ground, and that the defendant appeared to be rather "liquored up"; that he could not get him to talk; that the witness stooped over him within a few inches of his head and turned his head; that he acted as if he had been hurt; that he was breathing through his mouth and that the witness got "the full blast of his liquor" in his face; that "it was rotten shine and he was

powerfully loaded." There was some additional testimony along this line and we think it was a question for the jury to determine whether or not at the time of the collision the defendant was intoxicated. Whether the defendant's appearance and conduct after the accident was caused by intoxication at the time of the accident or was caused by the shock of the collision and the excitement following was a jury question, the determination of which by the jury should not be disturbed by the Court. The Supreme Court "is not a trial court, and upon questions involving the sufficiency of the evidence to support a verdict merely inquires whether there appears to be substantial evidence to support it and nothing exists to indicate that the jury was influenced by considerations outside the evidence." Holstun v. Embry, 124 Fla. 544, 169 So. 400. In the same case it was held that the movant for a new trial is entitled to the benefit of the trial Judge's judicial opinion in the evidence, and that the trial Judge should grant a new trial if there is difficulty in reconciling the verdict with the justice of the case and the manifest weight of the evidence. Citing Seaboard A. L. Ry. Co. v. Anderson, 73 Fla. 1, 73 So. 837.

The guiding principle for an appellate court is not what it may think the jury ought to have done or what such court may think it would have done had it been sitting as a jury in the case, but whether as reasonable men the jury could have found such verdict upon the evidence. If this question can be answered in the affirmative, the action of the trial court in denying a motion for a new trial should not be disturbed. Cobb v. Twitchell, 91 Fla. 539, 108 So. 186, 46 A. L. R. 865; Triay v. Seals, 92 Fla. 310, 109 So. 427.

Where there is evidence from which all the essential elements of the crime may legally have been found, and it

does not appear that the jury was influenced by considerations other than the evidence, the order of the trial court refusing to grant a new trial on account of the insufficiency of the evidence, or because the verdict is contrary to the evidence, will not be reversed, unless, after allowing all reasonable presumptions for the correctness of the verdict, the preponderance of the evidence against the verdict is so decided as to clearly convince the appellate court that it is wrong and unjust. Pickeron v. State, 94 Fla. 268, 113 So. 707; Bullard v. State, 95 Fla. 997, 117 So. 381.

In this case the trial court denied the motion for a new trial and in so far as the conviction under the first count in the indictment is concerned we cannot say that there was any error committed.

But we do not think there was sufficient substantial evidence tending to support the second count. That count charged the defendant with causing the death of Mr. and Mrs. Rawlins by culpable negligence in that the defendant, with a "reckless disregard of the life and safety" of said persons did cause their death by running against the automobile in which they were riding with an automobile which he, the defendant, "was then and there driving and operating in a dangerous, reckless, careless and negligent manner."

The Court's charge was, as held in our original opinion, quite comprehensive and correct, and we find no reversible error therein. Considering the charge as a whole, we think it was fair both to the State and the Defendant, and that the questions for the jury to determine under both counts were fairly and properly submitted to them. Nor was there any reversible error in the rulings of the Court on the admissibility of evidence.

But for the reasons pointed out, we think a new trial should have been granted, at least as to the second count

of the indictment, which requires a reversal of the judgment of conviction and the sentence therein imposed.

Our former affirmance is vacated and the judgment below reversed and the cause remanded for further proceedings consistent with the foregoing opinion.

Reversed and remanded.

ELLIS, C. J., and TERRELL, J., concur.

DAVIS, J., concurs in conclusion to award a new trial in order to avoid affirmance of judgment by equal division of court.

WHITFIELD and BUFORD, J. J., dissent on grounds stated in original opinion and also as stated in dissenting to this opinion.

BUFORD, J. (dissenting).—In this case a petition for rehearing was granted and oral argument had. The original opinion and judgment filed herein on February 24, 1936, have also been carefully reconsidered.

It appears that there has been some confusion concerning the possible application of the law of contributory negligence to the factual conditions of this case.

The law of contributory negligence has no application whatever. The plaintiff in error, defendant in the lower court, was driving an automobile along the highway. A person by the name of Greene was driving along the same highway in another automobile, going in the opposite direction.

The testimony is conflicting as to the degree of negligence attributable to Graives and to Greene. The automobiles driven by these two parties came in contact with one another and after the automobile driven by Graives had come into contact with the one driven by Greene it then came into violent contact with another automobile which

was occupied by B. T. Rawlins and Annie Rawlins, which contact resulted in the death of B. T. Rawlins and Annie Rawlins.

There is no evidence, and no contention, that any person having to do with the operation of, or occupyig the automobile in which the Rawlins were riding was guilty of any negligence whatever. Neither is there any contention, or any evidence, that either of the persons killed was in, or had anything to do with the operation of the automobile driven by Graives, or with the automobile driven by Greene.

It may be that Greene was as guilty of negligent operation of an automobile on the highway as was Graives and that he was equally guilty with Graives of the commission of an unlawful homicide, but, whether he was guilty or not would not affect the status as to guilt or innocence of Graives unless it had been shown that Graives was not guilty of negligence and, therefore, not in any degree responsible for the deaths resulting.

Having made this explanation, it seems to me that no good purpose can be served by discussing the case further.

I think the opinion and judgment filed here on February 24, 1936, should be and is now adhered to.

WHITFIELD, J., concurs.