BASIL BARRINGTON, Appellant, v. STATE, Appellee.

199 So. 320
Division A
Opinion Filed November 19, 1940
. Rehearing Denied January 8, 1941

62

*Philip D. Beall, Jr.,* for Appellant;

*George Couper Gibbs,* Attorney General, and *William Fisher, Jr.,* Assistant Attorney General, for Appellee.

THOMAS, J.—The appellant was charged in the first count of an information with having caused death by reason of his culpable negligence in the operation of an automobile, and in the second count with having effected the death of another while, intoxicated, he operated an automobile on the public highway.

After the jury heard all the testimony in the case and the charge of the court, a verdict of guilty under the second count was returned. The appellant having thus been acquitted of the charge in the first count, we will confine our

discussion to the questions presented by him based on his conviction of the alleged manslaughter growing out of the operation of an automobile while he was in a drunken condition.

The questions, two in number, to which the brief of appellant applies may be said to present but one proposition, namely, the sufficiency of the evidence to support the verdict, and in disposing of the case, we will consider two phases of the proof: (1) whether the accused was sober at times relevant to the collision, and (2) whether he was actually operating the car.

The first aspect is easily determined. Although there was testimony introduced on the part of the defendant tending to establish that he was sober shortly after the fatal collision, there was ample proof from the witnesses for the State to substitute the allegations of the second count of the information, hence the verdict, that he was in fact intoxicated. For illustration, the foreman at a garage swore that two or three hours before the accident occurred the defendant came to the place where he was employed and was so intoxicated that he was staggering, and apparently could not readily comprehend the simple transaction of purchasing and paying for one quart of oil. The same person stated on the witness stand that he went to the scene of the accident where he saw the accused who seemed to have been asleep or, to quote the witness, to have "kinda slept off being drunk," although the witness considered defendant "cold sober" then. An investigator from the sheriff's office stated that he went to the place where the collision occurred, found the car occupied by the defendant one hundred and fifty yards from the one in which the victim was riding, and that the defendant was sitting in his car asleep. The deputy sheriff believed that the defendant was drunk at the time because when he was

awakened, the defendant stated that he was tired and sleepy, and indicated that he did not know that any accident had happened. Upon being shown the damage to his own car, his remark was "they hit me first."

To repeat, with some elaboration, the accused was in a staggering condition in Pensacola, Florida, about two hours before the collision happened in an adjoining county. The cars were separated a distance of four hundred and fifty feet by the force of the impact and yet the defendant knew nothing of the accident. Despite the usual confusion of a roadside accident, when the injured parties were being removed from the scene, and the curious had gathered, he slumbered. All of this was most convincing that he was in fact drunk at the time of the collision.

The jury were thoroughly justified in concluding from these circumstances and those which will appear when we discuss the second phase of the testimony that the defendant was in an inebriated condition.

It is argued strenuously by appellant's counsel that the State failed to establish beyond a reasonable doubt that the defendant was operating the car because at the time of the accident it was parked on the highway and was not actually in motion.

This position is predicated upon the definition of the lone word "operation" which is used in the statute denouncing as manslaughter the killing of a human being "by the operation of a motor vehicle by any person while intoxicated." Comp. Gen. Laws 1927, Sec. 7749. In other words, it is contended that inasmuch as the evidence showed that the car of the appellant was motionless in the road, it was not in operation (because there cannot be operation without motion) and that therefore his conviction under the statute cannot be sustained.

Amplifying somewhat the facts we have stated above, in

order that the reader may more easily understand the background of the action, the night was dark and there was a light rain as the driver of the car in which the deceased was riding approached one of the bridges across Escambia Bay. The defendant shortly before had stopped his car on the bridge between the margin and the center line in the traffic lane, the right one, along which the victim's car was proceeding. It was seen in that position by the passengers of another car which passed that way immediately prior to the collision, and at least one of these passengers noted a man, evidently the defendant, seated in the parked car with his head resting on the back of the seat. The driver of the car in which the deceased was riding stated positively that there were no lights on defendant's automobile.

The story of the defendant, besides a denial of his drunkenness, was that while he was driving across the bridge the fuse in the lighting system of his car became dislodged and that he stopped after passing the bridge in order to make repairs. He said that he had "just about fixed" the lights when the car struck him. One of the witnesses for the State, a deputy sheriff, testified that when he reached the place of the accident the lights on the defendant's car were not burning, and that the defendant himself lighted them by simply turning a switch. There is no testimony whatever that the defendant imbibed after he parked his car on the bridge, and there is much in the record, as we have pointed out, showing his condition for the period preceding the occurrence to which emphasis is given by his demeanor immediately afterward.

So it will be seen that the appellant actually drove the car along the highway to the point where it was eventually struck, and that it was not in motion between the time he halted and the moment of the accident. That it may not have been moving at the time of the impact does not seem

to us so important when we consider that it was under the control of the defendant at the time he placed it in such a position on the highway that it became a menace to moving traffic. It is our view that in this factual situation death was caused by the operation of the car by the defendant while he was intoxicated, and that it would be a strained construction of the statute, obviously calculated to bring just punishment upon those who are responsible for the death of others because of the mismanagement of automobiles due to intoxication, to hold that if a man, though drunk, had sufficient consciousness to halt a car in the road and stop the engine before actually being hit by another, it could not then be said that any death which followed could have been the result of the operation of the car while the driver was in a drunken condition.

From our examination of the authorities which have been cited to us by appellant and the appellee, the one which in our view contains the most logical exposition of the law on the subject with which we are dealing, is found in the case of Commonwealth v. Henry, 118 N. E. 224, where it was said by the Supreme Court of Massachusetts that

"The word 'operated' is not, as the defendant contends, limited to a state of motion produced by the mechanism of the car, but includes at least ordinary stops upon the highway, and such stops are to be regarded as fairly incidental to its operation . . ."

"The statute must be read with reference to its manifest intent and spirit and cannot be limited to the literal meaning of a single word. It must be construed as a whole and interpreted according to the sense in which the words are employed, regard being had to the plain intention of the Legislature. So considered, we cannot doubt that the statute is broad enough to include automobiles at rest, as well as in motion, upon the highways."

Of similar import is the decision of the Supreme Court of Ohio: Lima Used Car Exchange Co. v. Hemperly, 120 Ohio St. 400, 166 N. E. 364.

As was pointed out in the Massachusetts decision followed in the opinion of the Supreme Court of Ohio, the purpose of such statutes is obvious, namely, to safeguard motorists and protect them particularly from those who venture forth on the highways in automobiles while at the time not having full possession of their faculties due to the overindulgence in intoxicating liquors, and with this idea in mind we cannot find strength in the appellant's motion with reference to the construction of the single word used in the definition of the crime which was denounced by the Legislature.

When the defendant in a drunken state, as the jury justifiably found, drove to the point where he parked his car and left it an obstacle in the path of other automobiles proceeding along the highway, that was an "operation" of the vehicle while intoxicated, and he cannot be excused for the wrongdoing simply because his car had lost its motion at the time an unwary traveler paid with her life in a collision directly caused by the improper placing of the vehicle by a driver while inebriated.

We reach the view that the judgment of the lower court should be—

Affirmed.

TERRELL, C. J., and BUFORD, J., concur.

CHAPMAN, J., concurs in opinion and judgment.

Justices WHITFIELD and BROWN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.