[No. 35489. *En Banc.* January 11, 1962.]

THE STATE OF WASHINGTON, *Appellant,* v. JOHN FRANCIS COSTELLO, *Respondent.*\*

\*Reported in 367 P. (2d) 816.

*Charles O. Carroll* and *James D. Burns,* for appellant.

*John F. Evich* and *Joseph D. Holmes,* for respondent.

OTT, J.—November 9, 1958, John Francis Costello was operating his automobile in a northerly direction upon 16th Avenue Southwest in Seattle, when he struck and mortally wounded Charles W. Johnson, a pedestrian crossing the street at a place other than a pedestrian intersection. Costello was charged with the crime of negligent homicide. The jury returned a verdict of guilty. The court thereafter granted defendant's motion in arrest of judgment for the reason

" . . . that there was no evidence or proof of recklessness or intoxication on the part of the defendant, which was the proximate cause of the death of Charles W. Johnson adduced at the trial of this cause, said evidence or proof being a necessary element of the crime of Negligent Homicide."

From the order arresting judgment and, in the alternative, granting a new trial, the state has appealed.

The ground for arrest of judgment relied upon by the trial court presents a single issue: Was there sufficient evidence to sustain the verdict?

RCW 46.56.040 provides in part:

"When the death of a person ensues within one year as a proximate result of injury received by the operation of a vehicle by any person while under the influence of or affected by intoxicating liquor or narcotic drugs or by the operation of any vehicle in a reckless manner or with disregard for the safety of others, the person so operating such vehicle shall be guilty of negligent homicide by means of a motor vehicle. . . ."

The court determined, as a matter of law, that the state's evidence was insufficient to prove the elements of the offense charged. The elements were defined in instruction No. 4 as follows:

"To convict the defendant, JOHN FRANCIS COSTELLO, of the offense herein charged, the state must prove to you beyond a reasonable doubt:

"(1) That on or about the 9th day of November, 1958 the defendant operated a motor vehicle in a northerly direction upon 16th Avenue Southwest, a public highway;

"(2) That he did operate said motor vehicle
    (a.) In a reckless manner, OR
    (b.) With disregard for the safety of others, OR
    (c.) While under the influence of intoxicating liquor, OR
    (d.) While affected by the use of intoxicating liquor.

"(3) That as a direct result of such act or acts, the defendant drove said motor vehicle into and against the body of one Charles W. Johnson, a human being;

"(4) That as a proximate result of the aforesaid acts the said Charles W. Johnson was mortally injured, from which injuries the said Charles W. Johnson then and there died;

"(5) That the said acts occurred in King County, Washington.

"If you find from all the evidence in this case that the state has proved beyond a reasonable doubt elements (1), (3), (4) and (5) and either elements (2a.) or (2b.) or (2c.)

or (2d.) of the crime charged in the information, then it will be your duty to return a verdict of guilty to the charge of Negligent Homicide, as charged in the information.

"On the other hand, if after weighing all the evidence and lack of evidence you then entertain a reasonable doubt as to the establishment of any one of the foregoing elements, then you should return a verdict of not guilty."

No exception was taken to this instruction. Both counsel conceded in oral argument before this court that it became the law of the case, and that the parties are bound by it for the purposes of this review. The state, therefore, was required to prove each of the necessary elements set forth in instruction No. 4.

As to elements (1), (3), and (5), the respondent Costello stipulated as follows:

" 'IT IS HEREBY STIPULATED by and between the defendant herein and the attorney for the plaintiff that one Charles W. Johnson was struck by a 1957 Chevrolet Sedan, 1958 Washington license plate AMG 013, being operated by the defendant on 16th Avenue Southwest near its intersection with West Roxbury in King County, Washington on November 9, 1958 at approximately 12:01 A. M.

" 'SIGNED this 23rd day of December, 1958. John F. Costello, Defendant. Anthony Savage, Jr., Deputy Prosecuting Attorney, Attorney for Plaintiff. Witness James R. Cook, Witness Joel A. C. Rindal.' "

The evidence relative to elements (2a) and (2b) ("reckless manner" and "disregard for the safety of others") was furnished by four witnesses. John McQuade testified that, just prior to the accident, he was in the crosswalk south of where decedent was struck, and "I jumped out of the way to avoid being hit." Ernest H. Clementz heard the collision and saw "what happened." He took the license number as the respondent's automobile passed him, and further stated that the respondent was driving "quite fast" and in an "erratic" manner. Thomas Tucker, a merchant patrolman, testified that he heard the approach of respondent's automobile, and that it was being operated at a speed of approximately thirty-five miles an hour at a place where many persons were then crossing the street

due to the closing of the taverns and places of recreation. He further testified that decedent's body was dragged by respondent's automobile approximately forty feet; that respondent stopped his automobile only an instant, and then drove away from the scene.

Arthur Clayton and his mother and father were approximately two blocks north of the scene of the fatality and heard the impact. He testified that they were in the crosswalk when respondent ran a red light, driving at a speed of forty to forty-five miles an hour, and narrowly missed hitting them.

Relative to elements (2c) and (2d) (intoxication), the evidence established that, approximately fifty minutes after the accident, respondent was apprehended and interviewed by Sergeant Taylor and Officer Short of the Seattle Police Department, who testified as to respondent's conduct and appearance and concluded therefrom that he was then still under the influence of liquor. Similar evidence was furnished by Officers Meshke and Armstrong of the Washington State Patrol. At that time, respondent admitted that he had consumed two to five stubbies of beer, but stated that he had had nothing to drink after the accident.

Relative to the fourth element, the death certificate established that Charles W. Johnson died at 12:30 a. m., November 9, 1958, and that the cause of death was the injury he sustained as a direct result of having been struck by respondent's automobile.

In considering a motion in arrest of judgment, no element of judicial discretion is involved. Such a motion admits the truth of the evidence of the party against whom the challenge is made, and all inferences that can reasonably be drawn therefrom. The evidence must be considered most favorably to the party opposing the motion. *State v. Reynolds,* 51 Wn. (2d) 830, 322 P. (2d) 356 (1958); *State v. McDaniels,* 30 Wn. (2d) 76, 190 P. (2d) 705 (1948).

Applying these rules to the record before us, we hold that there was sufficient evidence or reasonable inferences from which the jury could and did find that each

element of the offense charged had been proved beyond a reasonable doubt.

The trial court erred in granting the motion in arrest of judgment.

Did the trial court err in granting respondent's alternative motion for a new trial? The motion was granted upon the following grounds: (1) Error of law occurring at the trial, and (2) the verdict is contrary to the law and evidence.

The trial court, in its memorandum opinion, stated:

". . . I did not realize, at the time, the significance or importance certain prejudicial aspects would assume in the case, but on voir dire the prosecution repeatedly emphasized 'a drinking problem' on the part of the defendant."

With reference to the voir dire examination of the jurors, the court asked this question: "Are there any of you who have any deep-rooted feelings in respect to the use, by anyone, of hard liquor, and particularly, of course, concerning this defendant?" The deputy prosecuting attorney asked general questions concerning intoxication and the use of intoxicating liquor, and whether such opinions, if any, would bias or prejudice the juror for or against the respondent in the event the evidence established that he had been drinking liquor prior to the fatality. Counsel for the respondent asked a prospective juror, who had sat on a similar case: "Now, is there anything, experience in this drunken driving case that would prejudice you in this matter?" Other jurors were asked in effect: "Do you have any prejudices against people who drink?"

■ No objection was made by the respondent to any question relative to the use of intoxicating liquor asked prospective jurors by either the deputy prosecuting attorney or the court. Our review of the voir dire examination does not disclose references to " 'a drinking problem' on the part of the defendant," but general questions concerning the use of intoxicating liquor, by which the bias or prejudice of a prospective juror might be determined. Such interrogation was necessary and proper, and resulted in excusing several prospective jurors.

As a final ground for granting a new trial, the court held

that prejudicial error occurred during the cross-examination of respondent's witness, Marvin Nelson, Jr., when "inquiry was made concerning other drunken episodes on the part of the defendant."

Mr. Nelson testified that respondent was sober at the time he arrived at the Nelson home, and that he was sober when he left a half hour before the fatality. On direct examination, the following question was asked: "Now, what was his condition when he arrived at your house, as to sobriety? A. Well, as far as I could determine, he seemed perfectly normal to me." The answer, "as far as I could determine," was a qualified response which invited further inquiry. On cross-examination, the deputy prosecuting attorney did inquire further, and objections to some of his questions were sustained. He finally asked these questions:

"Well, Mr. Nelson, would you know whether Mr. Costello was intoxicated or not? A. Well, if he acted any way but normal, I could tell if he had been drinking. Q. I see. Have you had occasion to drink with him? A. Yes. Q. Had occasion to get drunk together? MR. EVICH: Same objection. THE COURT: Sustained."

The jury was then excused, and counsel for the respondent requested the court to grant a mistrial and dismiss the jury because the questions asked, even though objections to them were sustained, had prejudiced the jury against the respondent on an issue of drunkenness, an offense with which the respondent was not charged. The court denied the motion, and instructed the jury as follows:

"At the near close of yesterday's session, you may recall witness Marvin Nelson, Junior, was on the stand, and the Prosecuting Attorney asked three questions in effect, or to the effect, had the witness ever seen the defendant, Mr. Costello, drunk. The Court sustained objections to those questions, but I find on reading the record that one question was answered by the witness. I should have stricken that answer and told you to disregard it, and since I did not do so, I am doing so now. I will tell you, the question was improper under the circumstances, and the answer is stricken and should be disregarded by you, *the reason being the question of whether the defendant was drunk on some other occasion is immaterial to this case.* The only issue of

sobriety of the accused in question in this case is at the very time of the accident, not some other time, and the danger in allowing the answer to stand, in addition to being immaterial, is that it might cause some of you to infer from the evidence that the defendant was a common drunkard. He is not charged with that offense, and it would be grossly unjust and unfair if you were to make such an inference, and would be prejudicial to his rights to a fair trial.

"I repeat for you that the only issue of sobriety in this case is at the time of the accident, when it occurred." (Italics ours.)

■ This instruction to disregard the questions and answers relating to intoxication, except those pertaining to the night in question, was clear and positive. It is presumed that juries follow the instructions of the court. *State v. Cunningham,* 51 Wn. (2d) 502, 319 P. (2d) 847 (1958).

■ One of the elements of the offense which the state undertook to prove was intoxication at the time of the fatality. The fact that evidence of intoxication might also prove the offense of drunkenness does not make such evidence inadmissible to establish an element of the offense charged. The evidence of sobriety presented on the part of the respondent and by the state is in sharp conflict. It was the sole province of the jury to decide the issue of fact. The jury, by its verdict, chose to believe the state's witnesses.

The court erred in granting the alternative motion for a new trial.

The order in arrest of judgment is vacated. The order granting a new trial, in the alternative, is reversed, and the cause remanded with instructions to enter judgment upon the verdict of the jury.

HILL, DONWORTH, WEAVER, and FOSTER, JJ., concur.

MALLERY, J., did not participate.

FOSTER, J. (concurring specially)—Although I have signed the court's opinion, attention should be directed to the fact that the court's instruction No. 4, interpreting the

elements of negligent homicide as defined in RCW 46.56.040, is erroneous because in it the jury was instructed that there must be a relationship of cause and effect between the intoxication and the act producing the fatal accident, while the statute itself makes it a crime if an accident occurs during the period of time when the driver is under the influence of intoxicating liquor, and a death is the proximate result of the accident. The error was, of course, favorable to respondent.

The statute, so far as material, is as follows:

"When the death of a person ensues within one year as a proximate result of injury received by the operation of a vehicle by any person *while under the influence of or affected by intoxicating liquor or narcotic drugs or by the operation of any vehicle in a reckless manner or with disregard for the safety of others,* the person so operating such vehicle shall be guilty of negligent homicide by means of a motor vehicle." RCW 46.56.040. (Italics mine.)

It cannot be overemphasized that the crime is committed if the fatal accident occurs while the driver of the car is under the influence of intoxicating liquor. It is no defense that the injury is not the proximate result of intoxication. The words "proximate result" refer only to the death being the result of an injury received while the driver is under the influence of intoxicating liquor.

Judge Mallery's special concurring opinion in *State v. Stevick,* 23 Wn. (2d) 420, 428, 161 P. (2d) 181, pointed this out, and emphasized that the contrary is true in a charge of manslaughter. Judge Mallery's language is:

" . . . Thus the killing of a human being by an automobile properly driven, would nevertheless constitute negligent homicide by means of a motor vehicle if the driver was intoxicated, and contributory negligence or lack of negligence as the proximate cause would not be a defense. The case is otherwise, and negligence must be shown, when manslaughter is alleged under Rem. Rev. Stat., § 2390, as in the case of *State v. Hedges,* 8 Wn. (2d) 652, 113 P. (2d) 530, where the defendant had shot and killed a human being while hunting deer. . . .

" . . . When the state can show negligence as the proximate cause of the death, but cannot show drunken or

reckless driving, Rem. Rev. Stat., § 2390, will sustain its charge of manslaughter if brought thereunder. When the state can prove drunken or reckless driving even though they are not the proximate cause of the killing, it can sustain its charge if brought under Rem. Rev. Stat., Vol. 7A, § 6360-120."

Prior to the enactment of the negligent homicide act,[1] prosecutions for traffic deaths could be brought only under the manslaughter statute. It is a matter of common knowledge that the obstacles to convictions on a charge of manslaughter brought forth negligent homicide statutes. *State v. Wojahn*, 204 Ore. 84, 89, 282 P. (2d) 675; Moreland, A Rationale of Criminal Negligence, 129, chapter 11 (C).

The very purpose of this statute was to eliminate the necessity of proving intoxication to be the proximate cause of the fatal accident. That proximate cause of such an accident is not an element of the crime is aptly stated in 8 Blashfield, Cyclopedia of Automobile Law & Practice (Perm. ed.), 212, 214, § 5385, as follows:

"Where the statute defines the crime of manslaughter as arising from the death of a human being, caused by the operation of a motor vehicle by any person *while intoxicated*, the question of culpable negligence at the time of the killing is not an element of the crime." (Italics mine.)

Accord: 5A Am. Jur. 968, § 1139; 61 C. J. S. 776, 777, § 660.

The legislature has plainly enacted that if one, while under the influence of liquor, drives his automobile fatally striking another the driver is guilty of negligent homicide. The legislature has not required a causal connection between the intoxication and the death, but only that a fatal accident occur while the accused was driving in an intoxicated condition.

For instance, the Florida statute, like our own, provides:

" . . . and if the death of any human being be caused by the operation of a motor vehicle by any person *while intoxicated*, such person shall be deemed guilty of manslaughter and, on conviction be punished as provided by existing law relating to manslaughter." 22 Fla. Stat. 600, 601, chapter 860, § 860.01. (Italics mine.)

[1]Laws of 1937, chapter 189, § 120, p. 911, now codified as RCW 46.56.040.

Under this statute, *Tootle v. State,* 100 Fla. 1248, 130 So. 912, held that culpable negligence was not an element of the crime. Other Florida cases hold that, if a person is indicted both under the manslaughter statute and the negligent homicide statute and is acquitted of culpable negligence, conviction can, nevertheless, be sustained under the negligent homicide statute. *Barrington v. State,* 145 Fla. 61, 199 So. 320; *Ates v. State,* 141 Fla. 502, 194 So. 286; *Graives v. State,* 127 Fla. 182, 172 So. 716.

The Wisconsin negligent homicide act provides:

" 'Any person who by operation of any vehicle *while under the influence of alcoholic beverages* . . . shall cause the death of another shall be deemed guilty of negligent homicide and upon conviction thereof shall be punished by imprisonment. . . .' " *State v. Peckham,* 263 Wis. 239, 56 N. W. (2d) 835. (Italics mine.)

*State v. Peckham, supra,* holds that under the quoted statute a causal relationship between the intoxication and the accident producing death was not an element of the crime.

Respondent cites a line of cases in which the charge was manslaughter as distinguished from negligent homicide. *State v. Tingen,* 247 N. C. 384, 100 S. E. (2d) 874, is a fair example. It was there held that a causal relationship between the driver's intoxication and the fatal accident must be proved to sustain a conviction. Washington decisions are in accord. *State v. Ramser,* 17 Wn. (2d) 581, 136 P. (2d) 1013; *State v. Vanskike,* 120 Wash. 659, 208 Pac. 84. The very purpose of the negligent homicide act is to eliminate the necessity of such proof.

The legislature concluded that to treat the problem as a mere question of causation would sacrifice the public security in deterring extremely perilous conduct. That choice was for the legislature. The court's duty is only to apply the law as enacted. The predominant purpose of the statute is to prohibit drunken driving. The crime of negligent homicide is committed if a fatal accident occurs while the driver is under the influence of intoxicating liquor. The legislature has not required that the fatal accident be the proximate result of intoxication, but only

that such accident occur during the period of time when the driver is intoxicated. The requirement of cause and effect is confined to proving that the death was the proximate result of the accident.

I fully agree that the court erred in arresting the judgment.

HILL, DONWORTH, and WEAVER, JJ., concur with FOSTER, J.

ROSELLINI, J. (dissenting)—The state has failed to prove the fourth element of the crime of negligent homicide in instruction No. 4, that recklessness or intoxication was the direct and proximate cause of the death.

In Annotation, 99 A. L. R. 772, entitled "Wrongful or illegal act as proximate cause of death," the general rule is said to be:

"In order that a person may be guilty of a criminal homicide arising from the negligent operation of an automobile or its use for an unlawful purpose or in violation of law, it is uniformly held that it must be shown that such negligent operation, or use for an unlawful purpose or in violation of law, was the direct and proximate cause of the death; that is, that there was present a causal connection between the act and the death."

This court in *State v. McDaniels,* 30 Wn. (2d) 76, 190 P. (2d) 705, recognizing this rule, said at p. 89:

". . . it is true that in a prosecution for negligent homicide, under Rem. Rev. Stat., Vol. 7A, § 6360-120 [now codified as RCW 46.56.040], the state has the burden of proving beyond a reasonable doubt that the defendant's negligence was the proximate cause of death . . ."

The lack of proximate cause is best illustrated by the opinion of the trial judge rendered on the motion to arrest judgment.

"Under this statute, the 'proximate result' alluded to must undoubtedly mean the direct and efficient product or consequence of liquorish or reckless driving.

"The question is: Was there any evidence that the liquor, or recklessness, was the direct, efficient and producing cause of death?

"I think the question must be answered in the negative

as to both propositions. First, in my opinion, there is no evidence of reckless driving at the time and point of impact. Second, although there is evidence of alcoholic influence, there is no evidence that such condition in any manner directly and efficiently contributed to cause the accident. Under the evidence in this case, taking it in the light most favorable to the prosecution, the most sober driver would or could have done no more or less. *There is, at most,* a bare inference that the liquorish driving caused the accident, and that inference only because death occurred from impact with the defendant's car. There is no showing of anything that the defendant did or failed to do which caused this accident. This is not the case where a deceased was struck in a crosswalk, where he had a right to be. He was at a place where any driver was entitled to assume and expect him not to be. There is no evidence of a single act of negligence on the part of the defendant, which *directly* contributed to cause the accident.

"It seems to me that reasonable minds cannot differ upon these concepts. It was error to have denied the defendant's challenge at the close of the state's case. It was the duty of the court to rule, as a matter of law, that there was no proof in any degree, as to the defendant's acts or omissions being the proximate cause of death.

"In an effort to verify this logical and legalistic interpretation, I asked myself, 'Could or would any reasonable, careful driver (of total abstinence) have done anything more or different than the defendant did under the same and similar circumstances and conditions?' My answer is, 'I do not know what it could be.' Again: This case is not unlike that of a pedestrian being dropped from the sky, immediately in front of an automobile, with no opportunity for a reasonable, careful driver to avoid the accident. In such a situation, would the mere fact that the driver was under the influence be the proximate cause of death? I believe not."

This is a criminal statute and should be strictly construed.

The state having failed to prove one of the elements of the crime charged, I would affirm.

Finley, C. J., and Hunter, J., concur with Rosellini, J.

---

March 2, 1962. Petition for rehearing denied.