## Commonwealth v. Price

*Bernard Moore,* Assistant District Attorney, for Commonwealth.

*James Fox,* for defendant.

LOWE, J., September 27, 1972.—On the evening of March 30, 1970, defendant, Robert Alfred Price, and his 1969 Ford automobile were observed in a parking area to the rear of the residence of Joseph G. Ferrier and immediately adjacent his nearby glass-blowing shop. After observing the vehicle and its occupant "about five seconds," Mr. Ferrier telephoned the Whitemarsh Township Police Department.

Sergeant William T. Swan responded to the call and, upon arrival at the scene, found defendant half sitting and half lying behind the steering wheel of his automobile. This was the same position that Mr. Ferrier had earlier observed. Additionally, Sergeant Swan found the motor running and the lights of the vehicle illuminated. The sergeant also detected a strong odor of alcohol when he opened the car door, and damage to defendant's vehicle, which, upon casual examination, appeared to match corresponding damage to a nearby stone column situate at the entrance to the driveway into Mr. Ferrier's home and business from Ridge Pike or Route No. 422.

As defendant was being directed to alight from his vehicle, Officer William Fisher arrived upon the scene. Officer Fisher assisted the sergeant and observed defendant fall and exhibit all the usual indicia of intoxication. Both police officers were of the opinion

defendant was under the influence of intoxicating liquor. He was placed under arrest.

Defendant was taken to the Plymouth Meeting Substation of the Pennsylvania State Police and there administered the breathalyzer test. The reading was .19 percent blood alcohol, well above the level of presumptive intoxication.

An indictment charging a violation of section 1037 of the Act of April 29, 1959, P. L. 58, 75 PS §1037, was approved by the grand jury on September 8, 1970, and the prosecution proceeded to trial before a jury and the undersigned on June 17, 1971. On June 22, 1971, the jury returned a guilty verdict. Post trial motions seeking an arrest of judgment or a new trial have been dismissed and defendant sentenced.

It is to be remembered that the evidence, both direct and circumstantial, together with all reasonable inferences therefrom, must be reviewed in a light most favorable to the Commonwealth in determining the validity of the conviction: Commonwealth v. Heasley, 444 Pa. 454 (1971); Commonwealth v. Williams, 443 Pa. 85 (1971); and Commonwealth v. Weaver, 219 Pa. Superior Ct. 274 (1971). Mere conflicts in the testimony do not render the evidence insufficient to sustain a conviction: Commonwealth v. Pierce, 446 Pa. 479 (1972); Commonwealth v. Rankin, 441 Pa. 401 (1971). Furthermore, the jury is free to believe all, part of, or none of the testimony of any witness: Commonwealth v. Reid, 448 Pa. 288 (1972); Commonwealth v. Williams, 447 Pa. 206 (1972); Commonwealth v. Winebrenner, 439 Pa. 73 (1970).

Defendant's first assignment of error arises out of his contention, initially advanced at the pretrial suppression hearing, that the arrest was illegal because the charged misdemeanor was not committed in the presence of the arresting police officer: Pennsylvania

Rule of Criminal Procedure 102(3). Measuring the evidence and testimony adduced against the fair weight or preponderance of the evidence test as the court is required to do (Commonwealth v. Ravenell, 448 Pa. 162 (1972), Commonwealth v. Wilson, 430 Pa. 1 (1968), Commonwealth ex rel. Butler v. Rundle, 429 Pa. 141 (1968)), the trial judge had no difficulty in concluding defendant did "operate" his motor vehicle in the presence of Sergeant William T. Swan, the arresting police officer.

To "operate," as that word is employed in The Vehicle Code, means not only the conduct of the vehicle while it is in motion, but likewise the management of its mechanics while parked or in a motionless state. The words *operate* and *drive*, as applied to motor vehicles, may be synonomous, or nearly so, when those words pertain to a vehicle in motion, but the word *operate* has a much broader and less restrictive meaning when applied to a motionless vehicle and includes acts which engage the machinery or appliances of the vehicle and which, either alone, or in sequence, will set in motion the motive power of the vehicle: 60 C.J.S. §6(2). Though the appellate courts of this Commonwealth have had but scant opportunity to address themselves to this distinction,* the highest tribunals in a number of our sister States have specifically adjudicated that such a distinction exists and that *operating* a motor vehicle does not require its movement, State v. Sweeney, 77 N. J. Super. 512, 187 A.2d 39 (New Jersey, 1962), that *driving* has a more restricted meaning and that it is possible to *operate* a motor vehicle without *driving* it: McDuell v. State, 231 A. 2d 265 (Delaware, 1967). See also Prudhomme v. Hults, 278 N. Y. Supp. 2d 67

---

* Cf: Commonwealth v. Kallus, 212 Pa. Superior Ct. 504 (1968).

(1967), and Flournoy v. State, 106 Ga. App. 756, 128 S.E. 2d 528 (Georgia, 1962).

The Vehicle Code defines an operator: "Every natural person who is in actual physical control of a motor vehicle or tractor upon a highway whether or not licensed as an operator under the laws of this Commonwealth": 75 PS §102. It is clear the above definition of an operator conforms to the general proposition that operating a motor vehicle does not require its motion; it is sufficient that the machinery is set in motion which looks toward the vehicle's movement, or that there is actual physical control over the movements of the machinery. Indeed, such broadly worded statutes do not even require the running of the motor or engine: 61A C.J.S. §628.

The court now turns to the specific inquiry posed by the instant controversy: is a person operating a stopped motor vehicle when he is found behind its steering wheel with the motor or engine running? Clearly, the answer must be in the affirmative. Such conduct certainly falls within the parameters of the authorities advanced above and the definition of an operator previously recited. A number of authorities confronted with this precise factual situation have concluded similarly: State v. Lariviere, 2 Conn. Cir. 221, 197 A. 2d 529 (Conn., 1963); State v. Pritchett, 3 Sto. 583, 173 A. 2d 886 (Delaware, 1961); Barrington v. State, 145 Fla. 61, 199 So. 320 (Florida, 1941); Flournoy v. State, supra; State v. Fox, 248 Iowa 1394, 85 N.W. 2d 608 (Iowa, 1957); State v. Dill, 182 Kan. 174, 319 P. 2d 172 (Kansas, 1957); Waite v. State, 169 Neb. 113, 98 N.W. 2d 688 (Nebraska, 1959); State v. Sweeney, 40 N.J. 359, 192 A. 2d 573 (N.J., 1963); State v. Storrs, 105 Vermont 180, 163 A. 560 (Vermont, 1933); Gallagher v. Commonwealth of Virginia, 205 Va. 666,

139 S.E. 2d 37 (Virginia, 1964); and Prudhomme v. Hults, supra.

It is not surprising that several trial courts in this Commonwealth have concluded that, within the applicable definition and pursuant to the dominant view, one may be found to be the operator of a motor vehicle under The Vehicle Code in a situation wherein the motor or engine is not running: Commonwealth v. Cherrington, 50 D. & C. 2d 26 (1970); Commonwealth v. Winsett, 62 Lanc. 49 (1970); and Commonwealth v. Garretson, 50 D. & C. 2d 303 (1970).

The offense with which the court is here concerned need not be committed upon a public highway. There is nothing in The Vehicle Code so delimiting application of section 1037, and at least two trial courts in our Commonwealth have so concluded: Commonwealth v. Barger, 52 D. & C. 2d 744 (1971); Commonwealth v. Beese, 47 D. & C. 2d 413 (1969). One trial court has observed that though the offense need not be committed upon a public highway, it must be committed in a place where one might reasonably anticipate the presence of a motor vehicle: Commonwealth v. Goldscheiter, 57 D. & C. 490 (1946). In either event, the facts as elicited in this prosecution satisfy the enunciated standards, because defendant's vehicle was found where Mr. Ferrier, his family and business customers customarily parked their vehicles.

At the trial on the merits following the pretrial suppression hearing, the jury could have considered not only the question of whether or not defendant was guilty of the offense at the time and place that he was observed by the sergeant, but likewise the question of whether or not the circumstantial evidence was sufficient to overcome the presumption of innocence and to establish beyond a reasonable doubt that defendant

drove his vehicle on Ridge Pike or Route No. 422 and through the stone columns abutting the entrance to the driveway to the point where the vehicle was initially observed by Sergeant Swan: Commonwealth v. Marks, 164 Pa. Superior Ct. 280 (1949), Commonwealth v. Miller, 62 Lanc. 479 (1970); Commonwealth v. Hogue, 1 D. & C. 617 (1954); Commonwealth v. Smith, 93 Montg. 95 (1970), affirmed per curiam, 218 Pa. Superior Ct. 780 (1971). A conviction bottomed entirely upon circumstantial evidence will be sustained by the courts if it is " 'of such volume and quality as to overcome the presumption of innocence and to satisfy a jury of the accused's guilt beyond a reasonable doubt' " (Commonwealth v. Bondi, 217 Pa. Superior Ct. 133, 135 (1970)), and this principle of law pertains to every criminal prosecution including murder: Commonwealth v. Bartlett, 446 Pa. 392 (1972); Commonwealth v. Culbreath, 439 Pa. 21 (1970); Commonwealth v. Littlejohn, 433 Pa. 336 (1969).

Defendant's second assignment of error concerns the assistant district attorney's closing summation and a remark made during the course thereof which allegedly constitutes such prejudicial error as to justify and necessitate the granting of a new trial. The assistant district attorney made mention of the fact that his role was that of a representative of the citizens of the Commonwealth and of Montgomery County and that his clientele had the right to be protected on the highways from drunken drivers who could be considered potential murderers. Upon objection, the trial judge agreed with Mr. Fox's contention that the choice of language was extreme, so advised the jury, cautioned the jury with regard thereto and admonished the jury that the purpose of the act was to make our highways safe for other motorists and

pedestrians.* Mr. Fox was satisfied with this admonition to the jury and nothing further was said about it. At no time was there a motion for a mistrial entered pursuant to Pennsylvania Rule of Criminal Procedure 1118.

In the absence of a motion for a mistrial, the law requires that the trial judge instruct the jury to disregard the improper remark. This was done. Only a trial judge's refusal to so caution the jury is reviewable upon appeal as grounds for a new trial: Springer v. Allegheny County, 401 Pa. 557 (1960); Commonwealth v. Howard, 212 Pa. Superior Ct. 100 (1968). In this situation, appellate review is concerned not so much with what was said as with the course of action followed by the trial judge: Commonwealth v. Lowery, 440 Pa. 361 (1970); Commonwealth v. Wilcox, 316 Pa. 129 (1934); Commonwealth v. Gomino, 200 Pa. Superior Ct. 160 (1963). In any event, even if it be

---

* On balance, few criminal prosecutions are of greater social or economic importance than those under section 1037 of The Vehicle Code. There were 17,630 murders and nonnegligent manslaughters committed in the United States in 1971: Uniform Crime Report for 1971, released August 29, 1972, U.S. Government Printing Office, page 7. By comparison, this is approximately one-half the 35,000 Americans killed on our Nation's highways in 1969 wherein alcoholic beverage was involved: The Drunk Driver May Kill You, Allstate Insurance Company, Northbrook, Illinois, page 2. It is estimated 1,000,000 Americans were injured and that at least an $8,000,000,000 economic loss was sustained in 1969 alone by reason of alcohol-related traffic accidents. Id., page 2. The alcoholic involvement of operators and pedestrians is responsible for more deaths on the Nation's highways than any other single factor; they account for approximately one-half all deaths and injuries: Alcohol Safety Countermeasures Program, National Highway Traffic Safety Administration, United States Government Printing Office, 1971, page 2.

conceded the assistant district attorney's remark was error, considering the weight and volume of the damning evidence against defendant and the inordinately remote possibility that any juror was prejudiced by the comment, it must be concluded that the error was harmless beyond a reasonable doubt: Commonwealth v. Lowery, supra; Commonwealth v. Phillips, 183 Pa. Superior Ct. 377 (1957).

The prosecuting attorney has the right to argue to the jury the purpose of a criminal statute: Commonwealth v. Harrison, 137 Pa. Superior Ct. 279 (1939). The effect of such remarks or others upon the jury depends upon the atmosphere of the trial. The appropriate course of action where such an issue arises is largely within the discretion of the trial judge: Commonwealth v. Capps, 382 Pa. 72 (1955); Commonwealth v. McHugh, 187 Pa. Superior Ct. 568 (1958). In Capps, the district attorney referred to defendant as "a mad dog" and the judgment of sentence was affirmed. In Commonwealth v. Crittenton, 326 Pa. 25 (1937), the comments to the jury were even more offensive and defendant was compared to "a rabid dog," "a rattlesnake," "a loathsome creature" and "a beast of prey." Here, too, the conviction was sustained.

Defendant's third assignment of error concerns the trial judge's refusal to affirm all points for charge submitted on his behalf. The contentions advanced in this regard are not persuasive, and it is sufficient to observe that if the applicable law has been adequately reviewed in the charge, the trial judge is within his discretionary authority in refusing a point for charge upon it: Commonwealth v. Duca, 312 Pa. 101 (1933). A repetitious litany of intellecutally benign and legally inocuous points for charge calculated to impress the jury with counsel's legal acumen is properly denied by a trial judge: Commonwealth v. Duca, supra; Com-

monwealth v. Del Giorno, 303 Pa. 509 (1931); Amati v. Williams, 211 Pa. Superior Ct. 398 (1967).

Numerous other assignments of error have been advanced by the defense. None has merit. Defendant is entitled to a fair trial, not to a perfect one. "[W]e have consistently ruled that if the error did not deprive the defendant of the fundamentals of a fair trial, we will not reverse the conviction": Commonwealth v. Lopinson, 427 Pa. 284, 307 (1967), quoted with approval in Commonwealth v. Ravenell, supra, 171. There has been no error in this proceeding justifying either an arrest of judgment or a new trial.